MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2014 ME 57
Docket:      Cum-13-110
Argued:      November 20, 2013
Decided:     April 8, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MARC B. TERFLOTH

v.

TOWN OF SCARBOROUGH

SAUFLEY, C.J.

[¶1]  Marc B. Terfloth appeals from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*) affirming a decision of the Scarborough Board of Assessment Review denying his tax abatement request for property located in the upper Prout's Neck area of the Town of Scarborough.  *See* 36 M.R.S. § 841(1) (2013).  Terfloth argues that the Board's decision was manifestly wrong because the Board was compelled on the record before it to find that the Town's assessment substantially overvalued his property.[1]  We agree that the Town substantially overvalued Terfloth's property and vacate the judgment.

---

[1]  Terfloth also argues that the Board was required as a matter of law to find that the Town's system of assessment was unjustly discriminatory because it bore no relationship to the actual value of the properties in the Prout's Neck area of the Town, but we do not reach that issue.

## I.  BACKGROUND

[¶2]  In 2009, Terfloth purchased a house on 0.65 acres of land on the corner of Sanctuary Lane and Black Point Road in the upper Prout's Neck area of the Town.  Although the ocean is visible from the house, the property has no shore frontage and sits outside Prout's Neck's gated community.  The Town's assessor had valued Terfloth's property at approximately $3.5 million in 2005 and did not reassess it after the 2008 market downturn.  During the three years before Terfloth purchased the property, it was intermittently listed for sale.  Its listing price decreased each year as follows:

|  |  |
|---|---|
| June 23, 2006 | $6,200,000 |
| December 28, 2006 | $5,700,000 |
| June 8, 2007 | $4,700,000 |
| April 4, 2008 | $4,500,000 |
| September 2, 2008 | $3,700,000 |
| June 22, 2009 | $2,900,000 |

Terfloth purchased the property on December 23, 2009, for $2,435,000.  Terfloth is not related to the sellers and did not purchase the property at an auction or in a foreclosure sale.

[¶3]   On October 8, 2010, after the Town's assessor valued Terfloth's property for tax year 2010-11 at $3,503,800, the same assessed value as set in

2005, Terfloth paid the assessed property tax of $44,252.99 and filed an application for a tax abatement.[2] *See* 36 M.R.S. § 841(1). In his application, Terfloth asserted that the property's purchase price of $2,435,000, not the Town's assessment of $3,503,800, was the true measure of its market value, such that the Town's estate valuation should have been reduced by $1,068,800. In a letter dated January 3, 2011, the Town's assessor denied Terfloth's abatement request, stating that "[t]here were very few sales in [the Town] for the last year that fell 30% below [their] assessed value and most were distressed and[/]or foreclosures;" that the Town's assessment of Terfloth's property is "fair and equitable" when compared with others in the neighborhood; and that the Town will decrease the assessment of Terfloth's property if future sales in his neighborhood reflect a general decrease in property prices.

[¶4] On March 4, 2011, Terfloth filed an application for assessment review with Scarborough's Board of Assessment Review, arguing that the Town's assessment was manifestly wrong because it substantially and unjustly overvalued his property. The Board held a hearing on May 26, 2011, and on June 1, 2011, issued a written decision concluding that Terfloth "did not meet his burden of

---

[2] To appeal an assessor's denial of a request for abatement, a taxpayer must first pay the assessed tax. 36 M.R.S. § 843(4) (2013).

4

showing that the property has been substantially overvalued relative to its market value."

[¶5] At the Assessment Review hearing, the Town presented, together with other evidence, the assessor's valuation report, which identified Terfloth's purchase as an "Arms Length Sale." During the hearing, the assessor qualified that statement, indicating that he believed that the sale of Terfloth's property was not quite a foreclosure, but "in that range of foreclosure sales." The assessor provided no evidence on that point. The assessor also testified that he assessed Terfloth's property using a method he called the "square root of the fractional acre." This formula—which the Town has used since 1958—yields a valuation for property-tax purposes based on a zone-specific price for a half acre and the square root of the acreage of the property being valued. The use of the formula on Terfloth's lot resulted in an assessment of $3,503,800, which has remained unchanged since 2005. The Town's own evidence, including the list of assessment-to-sales ratios for other Prout's Neck properties, disclosed that the Town had assessed Terfloth's property at 144% of its sale price—a substantially higher ratio than for any other Prout's Neck property.[3] The assessor explained

---

[3] The assessor presented the following data showing assessment-to-sales-price ratios over twenty years:

| Year | Lot | Lot Size | Sale Price | Assessment | Assessment Ratio |
|------|-----|----------|-----------|-----------|------------------|
| 1991 | U019-21 | .51 AC | $950,000 | $759,600 | 80% |

variation among the assessment ratios by stating that (1) land over one acre is treated as excess acreage, (2) lots with the same owner are treated as one lot, and (3) the variance from the baseline valuation is inversely proportional to the size of the lot.

[¶6] The Board found, among other things, that properties similarly situated to Terfloth's property that sold in the Prout's Neck area in the five years preceding Terfloth's purchase were sold for over three million dollars and that the 144% ratio between the sale and assessment values of Terfloth's property "does stick out, but

| Year | Lot | Acreage | Sale | Assessment | Ratio |
|---|---|---|---|---|---|
| 1992 | U019-19 | .69 AC | $841,300 | $874,100 | 104% |
| 1992 | U020-48 | 1.04 AC | $637,000 | $688,800 | 108% |
| 1993 | U020-19 | .85 AC | $800,000 | $695,800 | 87% |
| 1994 | U019-01 | .66 AC | $601,000 | $551,800 | 92% |
| 1994 | U019-12 | 1.27 AC | $600,000 | $678,800 | 113% |
| 1994 | U020-03 | .88 AC | $430,000 | $489,900 | 114% |
| 1995 | U020-18 | .51 AC | $750,000 | $643,500 | 86% |
| 1996 | U020-14 | 2.5 AC | $1,400,000 | $1,008,600 | 72% |
| 1996 | U020-42 | .69 AC | $1,500,000 | $852,800 | 57% |
| 1998 | U017-30 | .56 AC | $1,850,000 | $761,200 | 41% |
| 2002 | U020-03 | .88 AC | $1,700,000 | $963,400 | 57% |
| 2003 | U019-22 | .51 AC | $3,000,000 | $1,223,700 | 41% |
| 2004 | U018-08 | .80 AC | $3,000,000 | $1,629,900 | 54% |
| 2005 | U019-18 | .64 AC | $6,000,000 | $3,559,200 | 59% |
| 2006 | U017-02 | .84 AC | $1,499,000 | $531,800 | 35% |
| 2006 | U019-01 | .66 AC | $4,000,000 | $3,056,100 | 76% |
| 2006 | U020-44 | .11 AC | $1,840,000 | $1,269,200 | 69% |
| 2007 | U018-20404-05 | 1.06 AC | $3,900,000 | $4,163,700 | 107% |
| 2007 | U018-2403 | .46 AC | $3,300,000 | $2,551,400 | 77% |
| 2008 | U019-17 | .52 AC | $3,500,000 | $3,070,700 | 88% |
| 2009 | U020-21 | .65 AC | $2,435,000 | $3,503,800 | 144% (Terfloth) |
| 2010 | U019-23 | .64 AC | $3,975,000 | $3,697,200 | 93% |
| 2011 | U018-2403 | .46 AC | $3,300,000 | $2,551,400 | 77% |

6

one sale does not make a market." The Board further stated, "It is just likely he got a good deal. His purchase price seems under what has been typical."

[¶7] On June 7, 2011, Terfloth requested that the Board reconsider its denial of his appeal.[4] The Board held a hearing on June 23, 2011, and voted to deny Terfloth's motion for reconsideration. Terfloth appealed the Board's decision to the Superior Court, which remanded the case to the Board in a judgment entered on December 30, 2011, *see* M.R. Civ. P. 80B; 36 M.R.S. § 843(1) (2013), finding that the Board had failed to state adequate conclusions and findings of fact.

[¶8] On February 9, 2012, the Board issued fifteen factual findings and two conclusions after reconvening in an executive session to comply with the court's decision. The Board found, among other things, that the Town's assessment formula is reasonable as applied to Terfloth's property; that the price Terfloth paid for his property, although significantly below the assessed value, does not justify deviation from the assessor's methodology; that the price Terfloth paid for his property "was an aberration in light of other sales" in Prout's Neck; that Terfloth failed to present "sufficient credible evidence" as to why his purchase price was lower than general sale prices in Prout's Neck; and that "it was not clear . . . that

---

[4] Specifically, Terfloth urged the Board to reconsider its conclusion that "[a]lmost all of the properties sold at Prout's Neck since 2005 have sold for over three million dollars" to the extent that it derived the conclusion from the sale value of lot U018-2403, a lot Terfloth asserted was never publicly listed for sale, but was sold privately in a non-arm's-length transaction. The Board declined to accept that argument after hearing on the motion for reconsideration.

the sale was an arm's-length transaction because of the length of time the [p]roperty was on the market." The Board concluded that Terfloth failed to demonstrate, first, that the Town's valuation was manifestly wrong or so irrational or unreasonable that the property was overvalued and, second, that the Town's "valuation was the result of unjust discrimination and that the Assessor used systematic and intentional methods to create a disparity," or that the assessor's method or assumptions were unfounded or arbitrary.

[¶9] On March 7, 2012, Terfloth again appealed the Board's decision, alleging that the Town's assessment is unjustly discriminatory and that the Board erred when it concluded that the sale to Terfloth was not an arm's-length transaction. *See* M.R. Civ. P. 80B. On January 31, 2012, the court, referencing the very high burden that a taxpayer must overcome on appeal, affirmed the Board's denial. Terfloth timely appealed pursuant to 14 M.R.S. § 1851 (2013) and M.R. App. P. 2.

## II. STANDARD OF REVIEW

[¶10] "When a party appeals a decision of the Superior Court in an action seeking review of a [tax assessment], we review the Board's decision directly for abuse of discretion, errors of law, and sufficient evidence." *UAH-Hydro Kennebec, L.P. v. Town of Winslow*, 2007 ME 36, ¶ 10, 921 A.2d 146. "That the record contains evidence inconsistent with the result, or that inconsistent

8

conclusions could be drawn from the evidence, does not render the [Board's] findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the [Board's] conclusion." *Town of Vienna v. Kokernak*, 612 A.2d 870, 872 (Me. 1992).

## III. DISCUSSION

A. Burden of Proof and Standard of Review of the Assessment

[¶11]   The Maine Constitution provides that "[a]ll taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof." Me. Const. art. IX, § 8; *see Weekley v. Town of Scarborough*, 676 A.2d 932, 934 (Me. 1996) ("'Just value' means market value."). Accordingly, an assessment must be supported by two factual findings. *Chase v. Town of Machiasport*, 1998 ME 260, ¶ 11, 721 A.2d 636. "[F]irst, the property must be assessed at its fair market value."[5] *Id.* (citing

---

[5]   Black's Law Dictionary defines "fair market value" as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction; the point at which supply and demand intersect." *Black's Law Dictionary* 1691 (9th ed. 2009). Several state courts have held that sale price is probative, but not dispositive, of fair market value. *See, e.g., Donlon v. Bd. of Assessors of Holliston*, 453 N.E.2d 395, 402 (Mass. 1983) (stating that sale prices are "very strong evidence of fair market value, [because] they represent what a buyer has been willing to pay to a seller for a particular property" (alteration in original)); *Appeal of Lakeshore Estates*, 543 A.2d 412, 415 (N.H. 1988) ("[T]he sale price of a piece of property is evidence of its value unless the court finds on evidence that there was not a fair market."); *Plaza Hotel Assoc. v. Wellington Assoc., Inc.*, 333 N.E.2d 346, 349 (N.Y. 1975) (stating that the property's sale price "should be accorded significance of the highest rank as a determiner of the value of the property, unless explained away as abnormal in some fashion"); *Sahalee Country Club, Inc. v. State Bd. of Tax Appeals*, 735 P.2d 1320, 1324 (Wash. 1987) (stating that one of three general methods of determining fair market value is "appraising property by analyzing sale prices of similar property").

*Quoddy Realty Corp. v. City of Eastport*, 1998 ME 14, ¶ 9, 704 A.2d 407); *see McCullough v. Town of Sanford*, 687 A.2d 629, 631 (Me. 1996) ("The sale price of property is probative of its market value."). "[S]econd, the assessed value must be equitable, that is, the property must be assessed at a relatively uniform rate with comparable property in the district." *Chase*, 1998 ME 260, ¶ 11, 721 A.2d 636.

[¶12]  A taxpayer who seeks a tax abatement must prove that the assessed valuation is "manifestly wrong."  *Id.* ¶ 12 (quotation marks omitted).  An assessment is manifestly wrong if the taxpayer can demonstrate

(1) that [the taxpayer's] property was substantially overvalued and an injustice resulted from the overvaluation;
(2) that there was unjust discrimination in the valuation of the property; or
(3) that the assessment was fraudulent, dishonest, or illegal.

*Town of Bristol Taxpayers' Ass'n v. Bd. of Selectmen/Assessors for the Town of Bristol*, 2008 ME 159, ¶ 8, 957 A.2d 977.

[¶13]  We focus here on whether the taxpayer's property was substantially overvalued.  "We will vacate the [Board's] decision that a taxpayer failed to meet his burden to show one of these three circumstances 'only if the record compels a

---

In some states, the sale price in a bona fide purchase is dispositive of fair market value.  *See, e.g., Pine Pointe Hous., L.P. v. Lowndes Cnty. Bd. of Tax Assessors*, 561 S.E.2d 860, 863 (Ga. Ct. App. 2002) (stating that fair market value is "the amount a knowledgeable buyer would pay for the property and a willing seller would accept for the property at an arm's length, bona fide sale"); *Wilde v. Town of Norwich*, 566 A.2d 656, 657 (Vt. 1989) ("[O]ur statutory definition of fair market value is the price which the property will bring in the market when offered for sale and purchased by another." (quotation marks omitted)).

10

contrary conclusion to the exclusion of any other inference.'" *Id.* ¶ 9 (quoting *Weekley*, 676 A.2d at 934).

B.    Substantial Overvaluation

[¶14]   Terfloth argues that the Board erred in concluding that he did not purchase his property in an arm's-length transaction, leading it to accept the Town's assessment, rather than the sale price, as an accurate representation of his property's fair market value.   Terfloth contends that the evidence compels the conclusion that he purchased his property in an arm's-length transaction, such that the sale price of his property provides competent evidence of his property's fair market value.   In so arguing, Terfloth points to the assessment ratio for his property of 144%, the highest assessment ratio for a Prout's Neck property since at least 1991,[6] and argues that it compels the conclusion that the assessed valuation of his property is manifestly wrong in relation to its just value.  *See Weekley*, 676 A.2d at 934.

[¶15]   The Town responds that the Board did not err because a property's sale price, although important, is not dispositive in determining its fair market value.  At the abatement hearing, where Board members sought to determine the fair market value for Terfloth's property, the assessor testified that there were too few recent sales of comparable properties in the Prout's Neck area for him to take

<hr>

[6]   The record contains no evidence of the assessment ratios of Prout's Neck properties before 1991.

the property's sale price as a statement of its fair market value. The assessor insisted that one sale does not make a market, and indicated that he would not reassess Terfloth's property unless more sales in the Prout's Neck area indicate that the property's sale price was, in fact, its fair market value. Based on the assessor's testimony and the length of time the property was on the market before Terfloth purchased it, the Board found that Terfloth had not proved that he had purchased his property in an arm's-length transaction and concluded that Terfloth's property was not substantially overvalued.

[¶16]  We conclude that the Board committed a factual error in finding that Terfloth failed to prove that he had purchased his property in an arm's-length transaction and thereby inferentially finding that Terfloth did not purchase his property in an arm's-length transaction. This factual error, together with the assessor's insistence that there be more local sales, even in a sluggish market, before reconsidering the value of Terfloth's property, led the Board to disregard the importance of the sale price of Terfloth's property in determining its fair market value and to conclude that Terfloth's property was not substantially overvalued. Thus, contrary to the Board's conclusion, the evidence compels the conclusion that Terfloth's property was substantially overvalued. *See McCullough,* 687 A.2d at 631.

12

[¶17]  Although evidence presented in an abatement hearing is within the Board's authority to believe or disbelieve, the Board's finding that Terfloth did not purchase his property in an arm's-length transaction is unsupported by any evidence in the record. *See Arnold v. Me. State Highway Comm'n*, 283 A.2d 655, 658 (1971) ("An actual sale very near to the time at which the value is to be fixed is of 'great weight' as contrasted with mere opinion evidence."). Specifically, the assessor's statement that the sale price for Terfloth's purchase was "in that range of foreclosure sales" is unsupported in the record. *See id*. Read in context, the evidence does not support the finding that Terfloth bought the property at a distress or foreclosure sale, from his own family, at an auction, or in another non-arm's-length transaction. Rather, the assessor's statement appears to constitute a tautology: the assessed value is the fair market value; the sale price is lower than the assessed value; therefore the sale price does not represent fair market value. Ultimately, it appears that the Town's assessor declined to give any weight to the sale price of Terfloth's property for two reasons: (1) the assessor believed he needed more comparable sales in order to determine fair market value; and (2) if he reassessed Terfloth's property, he would have to reassess other properties. Neither of those reasons provides a basis for completely disregarding the sale price of a property sold at arm's length.

[¶18]  Moreover, contrary to the Town's argument, the property's presence on the market for three years before Terfloth purchased it—including for six months at a price *lower* than its assessed value—further indicates that its sale price is more representative of its market value and that the Board erred in finding the contrary.  An additional indication that the Board committed a factual error is that in his evaluation report, the assessor himself described Terfloth's purchase as an "Arms Length Sale."

[¶19]  Although we have not held, and do not hold today, that the price from an arm's-length sale is dispositive of a property's fair market value, the Board's factual error regarding the arm's-length nature of Terfloth's purchase caused it to give too little weight to the sale price as representative of the property's fair market value.  *Town of Sw. Harbor v. Harwood*, 2000 ME 213, ¶ 19, 763 A.2d 115 ("The arms length sale price of property provides the best evidence of market value.").  Considered along with the fact that the Town had not reassessed Terfloth's property since 2005—despite the market downturn in 2008—the evidence compels the conclusion that "the property is substantially overvalued and an injustice" has resulted.  *See McCullough*, 687 A.2d at 630.  We therefore vacate the Board's determination and remand for a reevaluation of Terfloth's property.

The entry is:

> Judgment vacated and remanded to the Superior Court for remand to the Scarborough Board of Assessment Review for further proceedings consistent with the opinion herein.

---

**On the briefs:**

John C. Bannon, Esq., and John B. Shumadine, Esq., Murray, Plumb & Murray, Portland, for appellant Marc B. Terfloth

James N. Katsiaficas, Esq., Perkins Thompson, P.A., Portland, for appellee Town of Scarborough

**At oral argument:**

John B. Shumadine, Esq. for appellant Marc B. Terfloth

James N. Katsiaficas, Esq., for appellee Town of Scarborough

Cumberland County Superior Court docket number AP-2012-19
FOR CLERK REFERENCE ONLY