STATE OF MAINE                                    SUPERIOR COURT
AROOSTOOK, ss.                                    CARIBOU
                                                  DOCKET NO. CARSC-AP-
                                                  2016--004

INHABITANTS OF THE                    )
TOWN OF EASTON                        )

          PLAINTIFF/APPELLANT         )
v.                                    )
                                      )
THE COUNTY OF AROOSTOOK and           )
Its COMMISSIONERS                     )
          DEFENDANT/APPELLEE          )
                                      )
                                      )
                                      )
                                      )
And                                   )
                                      )
                                      )
ELI H. GLICK, et al                   )
                                      )
          PARTIES IN                  )
INTEREST/APPLICANTS                   )
                                      )

The Inhabitants of the Town of Easton (hereafter Town) have appealed from

the decision of the The County of Aroostook and its Commissioners

(hereafter Commissioners or County) granting requests for tax abatements.

In 2015 the Town conducted a community wide revaluation resulting in a

town-wide increase in valuations and tax assessments. The Applicants are

1

Eli H. Glick, Uria E. Miller, Jacob E. Miller, Samuel M Swartzentruber, Jonas Gingerich and Enos M. Yoder. In February 2016 the Applicants each made similar applications for abatement of property taxes. (references to the Record appear as R. at _ ) (R. at 4-18). Prior to their applications the Applicants had each recently erected similarly constructed large barns. The Applicants are of Amish heritage and built their barns in the Amish tradition of assembling large groups of their people and erecting the structures in a community effort, i.e. a barn raising. (R. at 217) In their applications for abatement, the Applicants each similarly asserted the Town's valuation was overstated and explained their varied purposes and uses, and the barns simplistic construction and limitations. (R. at 4-18). The Town did make modest adjustments to two Applicant's assessments but otherwise denied the requests. (R. at 1). The Applicants appealed the Town's denials to the Commissioners of Aroostook County. (R. at 55-97).

Hearing was held before the Commissioners on June 22, 2016. The Applicants testified at the hearing, supplementing the information they had previously provided in their abatement applications. The testimony included a description of the Amish barn raising tradition, general descriptions of the barns simplistic design and construction with no modern day amenities. (R.

2

at 217-219). And the Applicants each described how much material costs they had into their barns and provided estimates of what labor would have cost had they in fact had to pay for labor. Id. [1] At the hearing the Applicants sought an abatement of approximately 50% of the Town's valuation. (R. at 221). There was no mathematical showing or formula indicating how they arrived at that requested amount.

The Town also presented evidence at the hearing, which included the tax cards(valuations) for the Applicant's properties and also for what the Town presented as comparable properties. (R. at 106- 121, 124- 169). In addition the Town Manager, James Gardner, and the assessor hired by the Town to conduct the revaluation, Garnett Robinson, testified. A summary of that testimony and evidence includes:

-the Town conducted a complete re-evaluation as required by the State of Maine;

-the assessor looked at all properties and attempted to equalize values;

-the Amish barns are large, discounts were made for material quantity and allowed for depreciation;

-cost schedules (method) were used for valuation;

[1] Some of the Applicants used a $12 per hour estimate for labor cost but most just offered an estimated lump sum.

3

-sales data of the subject or similar properties was unavailable;

-the properties were classified at "D" quality;

-the barns were assessed as if contractors were hired for construction;

-disharmony exists with local contractors regarding Amish labor rates;

-comparables were provided. (R. at 219-220).

Ultimately the Commissioners found that the Applicant's religion, lifestyle and community effort allowed them to build the large structures in an economical way, and that the simplistic construction of the barns without modern conveniences have a mitigating impact on "just value". (R. at 220). The Commissioners found the Applicants had met their burden to show the assessments were "manifestly wrong" noting specifically:

-the wide disparity between the Applicant's costs(to construct) and the municipal valuation of their structures, a significant portion of the disparity due to the simplicity of the structures;

-there is no evidence on the record to support the true market value of these properties or similar structures, the structures are unique to the Amish and the pool of potential buyers is practically limited to the Amish;

-there is no comparable property on the record; the "so-called" comparables (provided by the Town) include structures with concrete floors,

4

insulation, heat, air conditioning and air exchange units, electricity, running water, bathrooms, etc. These properties(comparables) support modern conveniences that the Amish structures do not possess;

-the Applicants material and labor costs were not challenged;

-from a market perspective, the Amish structures are not attractive to potential buyers because they don't have the features, convenience and amenities that most consumers consider essential, they are "only good for Amish"; These structures have reduced utility and market value. (R. at 220-221).

Finding that the Applicants had met their burden, The Commissioners then addressed the amount of abatement, citing "If the commissioners think that the applicant is over-assessed, the applicant is granted such reasonable abatement as the commissioners think proper." 36 M.R.S.A. 844(1). (R. at 221). The Commissioners noted the Applicants sought an abatement of 50% of their valuation. Id. The Commissioners further indicated grading is a significant variable in valuation but found the Town's testimony to be material weak pertaining to grading. Id. The Commissioners also found that the Town's assertion that the barns were valued at a D grade was "not true in all cases." Id. The Commissioners also indicated that they had requested

5

from the Town more information concerning grading but none was provided. Id. The Commissioner ultimately ruled "..we believe a reduction of 25% ...is in order.....it is fair and just...These structures are basic, rudimentary and, in many ways, obsolete. Their demand on the open market is really quite limited and we believe their value is significantly diminished because of that." Id. The Commissioner's decision did not provide any mathematical basis or formula demonstrating how they determined the 25% reduction.

The court notes that the evidence does not include any valuations based on comparable sales or by the income approach. The valuation approach utilized by the Town was the cost method, utilizing traditional contractors. Although the Applicants provided evidence of their material costs with an estimate for labor, they estimated labor at a rate of $12 per hour or simply provided a lump sum; the Applicants did not provide evidence of what the cost to erect their structures would be on the open market in a competitive process or with contractors. The court also notes that the record indicates the Commissioners did not view the properties. After the hearing the Commissioners did ask the Town to provide valuations for the properties at one letter grade condition lower. (R. at 186-206). But the Town refused to

provide such reduced valuations. Id.[2] No such request was made of the Applicants and the Applicants did not provide or offer such evidence of what the values of their properties would be if assessed at a condition one or some level lower than that utilized by the Town. So ultimately no valuation or data was in evidence or in the record to establish what the valuations of the properties would be if valued at a condition one level lower than that utilized by the Town.

## STANDARD OF REVIEW

In this case, the Superior Court is acting in an appellate capacity. This requires application of the substantial evidence standard of review, requiring it to search the entire record to determine whether on the basis of all the testimony and exhibits before the agency (Commissioners) it could fairly and reasonably find the facts as it did. Vienna v. Kokernak, 612 A.2d 870, 872 (Me. 1992). That the record contains evidence inconsistent with the result, or that inconsistent conclusions could be drawn from the evidence, does not render the commissioner's findings invalid if a reasonable mind

---

[2] The court interprets the Commissioner's request as asking for evidence of what the valuations would be if the properties were rated at a condition at the next lower level, in other words, asking the Town to provide the data for the valuation if the condition was reduced by one level. The Town refused to provide that data.

7

might accept the relevant evidence as adequate to support the commissioner's conclusion. Id.

The Maine Constitution requires that "all taxes upon real and personal estate, assessed by the authority of the State, shall be apportioned and assessed equally according to the just value thereof." Me. Const. art IX, § 8. Just value means market value. Terfloth v. Town of Scarborough, 2014 ME 57, ¶11. Accordingly an assessment must be supported by two factual findings. First the property must be assessed at its fair market value. Id. Second, the assessed value must be equitable, that is, the property must be assessed at a at a relatively uniform rate with comparable property in the district. Id.

A taxpayer who seeks a tax abatement must prove that the assessed valuation is "manifestly wrong." Terfloth, ¶ 12. An assessment is manifestly wrong if the taxpayer can demonstrate

(1) that the taxpayer's property was substantially overvalued and an injustice resulted from the overvaluation;

(2) that there was unjust discrimination in the valuation of the property, or

8

(3) that the assessment was fraudulent, dishonest, or illegal. Id. When a taxpayer appeals from a Town's denial of an abatement, the Commissioners begin their review of the assessment with the presumption that the assessor's valuation of the property is valid. Yusem v. Town of Raymond, 2001 ME 61, ¶ 8. To overcome the presumption, the taxpayer seeking an abatement from the Commissioners has the initial burden of presenting credible, affirmative evidence to meet his or her burden of persuading the Commissioners that the assessor's valuation was manifestly wrong. Id. If, but only if, the taxpayer meets that burden, the Commissioners must engage in an independent determination of fair market value. Id.

The judgment that a property's assessed value is in excess of just value requires a comparison between the local assessment and the version of value that the petitioner for abatement contends is the just one. City of Waterville v. Waterville Homes, 655 A.2d 365, 366, (Me. 1995). If the petitioner for abatement fails to provide the Board (in this case Commissioners) with evidence of just value that the Board (Commissioners) deems credible, the Board (Commissioners) has no basis in the petitioner's case for comparing local assessment and the petitioner's version of just value. Id.

9

## DISCUSSION

Applying the substantial evidence standard of review, there may be sufficient evidence in the record to support the Commissioner's finding that the Applicant's had met their burden to prove that the assessment done by the Town was wrong or high; but the Court cannot find any evidence which supports the Commissioner's decision to award a 25% reduction in the valuation or evidence of what the "just value" or "fair market value" would be if not the value established by the Town.

The Town utilized a cost method to assess the Applicant's properties, there being no viable sales data. The Town's assessment did adjust for material quantity, depreciation and considered the properties to be lower quality, typically "D" standard, but for labor it assessed the properties as if contractors had been hired, (R. at 219). The Applicants presented evidence describing that their properties did not have the amenities and conveniences of common modern buildings. And the Applicants presented evidence describing how they built the properties in their traditional barn raising fashion, with no cost for labor. But the Applicants only provided "estimates"

10

of what their labor would cost, either providing an estimated lump sum or an amount assuming $12 per hour per man hours.. (R. at 217-218).

The Commissioners specifically found that there was a wide disparity between the Applicants' costs and the municipal valuation, due significantly to the simplicity of the structures, lack of modern amenities and potential buyers being somewhat limited to Amish. Again, those findings are supported by the record, and could support a finding that the Town's assessment was too high. But that is not enough.

In essence, all that the Applicant's successfully proved was that the Town's assessment was likely high; they did not prove what the assessments of their buildings should be. Impeachment of the Town's assessment alone does not fully meet the Applicant's burden. See Waterville Homes, at p. 366. *"The petitioner for an abatement must prove his case. He must show that the property is overrated. Stated another way, the burden of proving that assessed value is in excess of just value is on the person seeking abatement...the taxpayer seeking abatement carries that burden by proving that the assessed valuation in relation to the just value is manifestly wrong."* Id., citing Sears, Roebuck & Co. v. City of Presque Isle, et al., 150 ME

11

181,186 and Delta Chemicals v. Inhabitants of Searsport, 438 A.2d 483,484 (Me. 1981).

The Waterville Homes case is instructive to the case at hand. In that case, the State Board of Tax Review, reviewing an abatement request that had been denied by the city assessor, impliedly found that the City's assessment was wrong. The petitioner's case had largely focused on impeaching the City's assessment, but presented "meager" evidence of value. Id. The Board found the City's assessment was wrong, but apparently also rejected the petitioner's evidence of value, so instead arrived at its own judgment of value. On appeal by the City, the Superior Court vacated the Board's decision, which was upheld on appeal to the Law Court. Id.

In this case, the Applicant's gave "estimates" of labor costs, some using $12 per hour for manhours while others provided an estimated lump sum. And in their applications they indicated the amount of abatement being requested. (R. at 4-18). But the Applicant's did not present actual evidence of "just valuation". They perhaps successfully impeached the Town's assessment by providing evidence of the buildings simplistic design and construction, and also evidence of their very modest construction cost. But this is not proof of

12

"just value". Instead of presenting evidence of "just value" the Applicants only stated what amount or level of abatement they sought, "..approximately 50%.." (R. at 221). It is noted that even the sum of the material costs and estimated labor costs provided by the Applicants does not resemble the tax valuations requested after a 50% abatement. There is simply no mathematical showing or formula or other evidence establishing how the Applicants arrived at the abatements requested. In the end, the court cannot find anywhere in the record where the Applicants provided evidence of just value.

Indeed, the Commissioners did not even accept the Applicant's proposal of a 50% reduction. Instead, the Commissioners awarded a reduction of 25%, stating "..it is an amount that is fair and just to the community as a whole." There is no evidence or showing in the record to support a 25% reduction or showing how the Commissioners determined this was an appropriate amount, i.e. no math, no formula. In other words, with no evidence in the record of just value, the Commissioners rejected the Applicant's suggested amount and exercised its own judgment of an abatement amount, with no showing how they arrived at that amount. The Commissioners made no findings of just value or fair market value.

13

Although the Applicant's may have produced sufficient evidence that the Town's assessment was high, they did not present actual evidence of just value or fair market value. The Applicant's produced evidence of the unique and unusual circumstances employed to erect these buildings with minimal cost, but that by itself is not evidence of just value or fair market value. In fact, in its decision, the Commissioners found "There is no evidence on the record to support the true market value of these properties or similar structures in the community." (R. at 220). As previously noted, the Commissioner's rejected the requested abatement amount, indicative that there was insufficient evidence to support such amounts, then exercised its own judgment. But as stated in Waterville Homes, *If the petitioner for abatement fails to provide the Board with evidence of just value that the Board deems credible, the Board has no basis in the petitioner's case for comparing the local assessment and the petitioner's version of just value. If the Board rejects the petitioner's evidence......and then remedies the deficiencies in the petitioner's proof by making its own calculation of just value independently of petitioner's proof, the Board relieves the petitioner of its burden to prove that the assessed valuation in relation to the just value is manifestly wrong.* Waterville Homes, p. 366.

14

That is the result here. The Applicants failed to meet their burden of producing evidence of their properties just value or fair market value. It was error for the Commissioners to remedy the Applicants deficiencies in their proof and exercise its own judgment of an abatement amount with no supporting evidence in the record. The Town's appeal is granted. The Commissioner's decision is hereby vacated and the decision of the Municipal assessor is reinstated.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Dated: _January 3rd_, 2017

Justice, Superior Court

15

Appeal CARSC-AP-2016-004

| Date Filed | 08/12/2016 | Aroostook | Docket No. | CARSC-AP-2016-004 |
|---|---|---|---|---|
| | | County | | |
| Action | 80B | | | |
| | | | | |
| Plaintiff | Inhabitants of the Town of Easton | vs. | Defendant | County of Aroostook Paul J. Adams, Commissioner Paul J. Underwood, Commissioner Eli Glick Uria Miller Jacob Miller Samuel Swartzentruber Jonas Miller Enos Yoder |
| | | | | |
| Attorney | Richard Currier | | Attorney | John Wall for Paul Adams and Paul Underwood |

Date of Entry

08/22/2016 Complaint filed by Atty Currier on 08/12/2016.

08/26/2016 Summons served on Douglas Beaulier on 08/17/2016 and filed on 08/23/2016.

08/26/2016 Summons served on Enos Yoder on 08/18/2016 and filed on 08/23/2016.

08/26/2016 Summons served on Uria Miller, Samuel Swartzentruber, Eli Glick, Jacob Miller, and Jonas Gingerich on 08/18/2016 and filed on 08/23/2016.

08/26/2016 Notice and Briefing Schedule issued to all parties on 08/26/2016.

09/15/2016 Answer and Affirmative Defenses (County of Aroostook and Commissioners Paul J. Adams and Paul J. Underwood) by Atty Wall filed on 09/02/2016.

09/26/2016 Consented to motion for enlargement of time signed by Justice Stewart on 09/26/2016.

10/04/2016 Record on Appeal filed by Atty Currier on 10/03/2016.

10/28/2016 Brief of Plt/Appellant filed on 10/21/2016 by Atty. Currier.

11/18/2016 Def/Appellees unopposed motion for enlargement of time filed by Atty. John Wall on 11/14/2016.

11/23/2016 Order granting Defendant/Appellees County of Aroostook and Commissioners Paul J Adams and Paul J Underwood's Unopposed Motion for Enlargement of Time signed by Justice Harold Stewart on 11/21/2016.

Appeal CARSC-AP-2016-004

12/05/2016  Defendants County of Aroostook and Commissioners Paul J. Adams and Paul J. Underwood's Rule 80B Brief filed by atty John Wall on 12/02/2016.

12/14/2016  Letter from Richard Currier, Esq. informing the court that the Town of Easton does not intend to file a Reply Brief and requesting a hearing or conference filed 12/14/2016.

01/06/2017  Justice Harold Stewart's Decision Entered 01/03/2017. "The town's appeal is granted. The Commissioner's decision is hereby vacated and the decision of the Municipal assessor is reinstated."