STATE OF MAINE                           SUPERIOR COURT
KENNEBEC, ss.                            CIVIL ACTION
                                         DOCKET NO. CV-19-28


ROQUE ISLAND GARDNER
HOMESTEAD CORPORATION,
          Petitioner

v.                                       **DECISION AND ORDER**
                                         (M.R. Civ. P. 80C)
TOWN OF JONESPORT,
          Respondent


## INTRODUCTION

Roque Island Gardner Homestead Corporation ("RIGHC") has filed a Petition for Judicial Review pursuant to 5 M.R.S. §§ 11001-11008 (Maine Administrative Procedure Act) and M.R.Civ.P. 80C, from a Decision of the State Board of Property Tax Review ("State Board") dated May 15, 2019, which denied its appeal from the refusal of the Town of Jonesport to grant an abatement of its property taxes. This case involves the application and interpretation of Maine's Farm and Open Space Tax Law. Accordingly, it is helpful to an understanding of this dispute to begin with an examination of that statutory property tax program.

## THE STATUTORY FRAMEWORK

The Constitution of Maine generally provides: "All taxes upon real . . . estate . . . shall be apportioned and assessed equally according to the just value thereof." Art. IX, sect. 8, Me. Const. Notwithstanding this general rule, however, the Constitution authorizes the Legislature to provide for the assessment of certain types of real estate "in accordance with a valuation based upon the current use thereof and in accordance with such conditions as the Legislature may enact." Among the types

of real estate that may be so assessed are: "Farms and agricultural lands, timberlands and woodlands." Art. IX, sect. 8(2)(A), Me. Const.

In 1971, the Legislature enacted the Maine Farm and Open Space Land Law. *See* P.L. 1971, c. 548 – 36 M.R.S. §§585-594. That law was repealed and replaced in 1975 with the Farm and Open Space Tax Law (hereinafter "Farmland Tax Law"). 36 M.R.S. §§1101-1121 as enacted by P.L. 1975, c. 726. As pertinent to property classified as "farmland," which is what this case is about, the stated purposes of this law are "to encourage the preservation of farmland . . . in order to maintain a readily available source of food and farm products close to the metropolitan areas of the State,. . . [and] to prevent the forced conversion of farmland . . . to more intensive uses as the result of economic pressures caused by the assessment thereof for purposes of property taxation at values incompatible with their preservation as such farmland . . . ." 36 M.R.S. §1101

The term "farmland" is defined to mean:

any tract or tracts of land, including woodland and wasteland, of at least 5 contiguous acres on which farming or agricultural activities have contributed to a gross annual farming income of at least $2,000 per year from the sales value of agricultural products as defined in Title 7, section 152, subsection 2 in one of the 2, or 3 of the 5, calendar years preceding the date of application for classification. The farming or agricultural activity and income derived from that activity may be achieved by either the owner or a lessee of the land.

36 M.R.S. §1102(4).

An owner of farmland may apply for taxation under the Farmland Tax Law by submitting a signed schedule on or before April 1st of the year the owner wishes to first subject the land to taxation under the law. 36 M.R.S. §§1103 & 1109(1). The application or schedule must be submitted to the municipal assessor on a form prescribed by the State Tax Assessor, and must show the location of the land in each classification (e.g., forested land, orchard land, pasture land, horticultural land). 36

M.R.S. §1109(1). There are a number of factors the assessor may consider in deciding whether land is farmland as defined. *Id.* If it is determined that the land is farmland, "the assessor shall classify it as farmland and apply the appropriate 100% valuations per acre for farmland and that land is subject to taxation under this subchapter."[1] *Id.*

The assessor is obligated by statute to notify the applicant/landowner on or before June 1st whether the application has been accepted or denied and, if denied, the assessor must give the reasons for the denial and allow the owner to amend the schedule. 36 M.R.S. §1109(4). The assessor has considerable authority to investigate to obtain information about the application, including entering upon the land, propounding interrogatories to the owner and requiring the owner to appear before the assessor to answer questions. *Id.*

Title 36 M.R.S. §1105 directs the assessor to "establish the 100% valuation per acre based on the current use value of farmland used for agricultural or horticultural purposes." In arriving at such current use values, section 1119 of the Farmland Tax Law provides for the Department of Agriculture, Conservation and Forestry, in conjunction with the Bureau of Revenue Services, representatives of municipal assessors and farmers, to "prepare guidelines to assist local assessors in the valuation of farmland," that "must include recommended values for cropland, orchard land, pastureland and horticultural land, differentiated by region where justified."[2]

---

[1] The municipal assessor is also required to keep a record of the value of the farmland "and the value at which the farmland would have been assessed had it not been classified under this subchapter." 36 M.R.S. §1109(1).

[2] Any variation from the recommended guidelines must be substantiated by the local assessor. 36 M.R.S. §1119.

The values for farmland "may not reflect development or market purposes other than agricultural or horticultural use." 36 M.R.S. §1105. The valuation for farm woodland within a farmland parcel is to be established by county and by forest type under the Tree Growth Tax Law. *Id. citing* 36 M.R.S. §§571-584-A. Section 1105 of the Farmland Tax Law concludes by stating: "Areas other than woodland, agricultural land or horticultural land located within any parcel of farmland classified under this subchapter are valued on the basis of just value."

For the purpose of assessing taxes, 36 M.R.S. §1108(1) directs assessors to "adjust the 100% valuation per acre for farmland for their jurisdiction by whatever ratio or percentage of current just value is then being applied to other property within the municipality to obtain the assessed values." Section 1108(1) further mandates that "the classified farmland value must reflect only the current value for farm . . . purposes and may not include any increment of value reflecting development pressure." The property tax rate for farmland property must be the same rate applicable to other property in the municipality. *Id.*

## FACTUAL AND PROCEDURAL BACKGROUND

RIGHC is a Maine non-profit homestead corporation that owns Roque Island, Marsh Island and Bar Island in Mason's Bay within the municipality of Jonesport ("the Town").[3] On January 17, 2017, RIGHC applied to the Town for farmland classification for Marsh, Bar and Roque Islands in accordance with the Farmland

---

[3] The State Board has been involved with property tax issues with RIGHC and the Town on at least one previous occasion. In *RIGHC v. Town of Jonesport*, No. 2016-003 (BPTR, May 18, 2017), the State Board held that all three islands were contiguous, thereby allowing Bar and Marsh Islands, when combined with Roque Island, to meet the 5-acre minimum threshold necessary to qualify for classification as "farmland" under the Farmland Tax Law. 36 M.R.S. § 1102(4) (Administrative Record, "A.R." at 16). The court understands that the State Board's decision was a divided one and ultimately led to the enactment of P.L. 2017, c. 183 by the Legislature. *See* 36 M.R.S. § 1102(4)(C). That section of the law addresses the subject of when a parcel of land on an island may be considered as being contiguous with a parcel of land on a different island. That legislation has no effect on this litigation.

Tax Law for the 2017 tax year. (AR at 36). The application (or schedule) listed a total acreage of 1,323 for the three islands. The "Application for Farmland Classification," the form prescribed by the State Tax Assessor pursuant to 36 M.R.S. § 1109(1), breaks down land into four categories, to wit: farmland; land unsuitable for farmland; forest land, and; other land. (AR at 36-37). The "General Instructions" accompanying the application provide line-by-line guidance to the applicant in completing the form. (AR at 38-39).

The application submitted by RIGHC provided detailed information as to each category of land, as follows: farmland = 55.0 acres; land unsuitable for farmland = 28.5 acres; forest land = 1,225.8 acres; other land =13.7 acres, of which 5.7 acres referred to "farm & housing structures" and 8.0 referred to roads. Attached to the application was a detailed "Summary of Farmland and Other Acreage" on the three islands as of January 1, 2017. (AR at 40). The application also included maps of the islands that delineated and illustrated the areas of land and the categories into which they fell. (AR at 41-43).

Although 36 M.R.S. §1109(4) provides that the assessor "shall notify the landowner, on or before June 1st following receipt of the signed schedule . . . whether the application has been approved or denied," no such notification was given to RIGHC by the Town of Jonesport. The Administrative Record in this appeal is somewhat confusing as to what happened next, but it appears that a representative of RIGHC contacted the assessor for the Town in early June, who initially said that the application could not be located. (AR at 48). Towards the end of June, however, the application had been found and RIGHC was informed at that time that the application had been approved with modifications. (Id). In early July, during the course of a meeting with one of the Town's assessors, RIGHC received a copy of the Town's "Worksheet" containing the modifications. (AR at 44 & 48).

On the worksheet, which was signed by two of the Town's assessors at different times (one in March, the other in July), changes were made to two categories of the "farmland parcel breakdown." In line 5d – "other land" – the figure 5.7 was lined out and the figure 10.0 was inserted (a difference of 4.3 acres), creating a new "total other acres" of 18.0 (the figure 13.7 also being lined out). In addition, next to the description of "farm & housing structures" was the word "sites" and an asterisk (*) with the notation: "* left out camp & shore front docking area." (AR at 45). The other modification was made on line 5b – "land unsuitable for farmland." The total unsuitable acres figure was reduced to 24.2 from 28.5, also a difference of 4.3 acres.[4] (AR at 44).

On July 11, 2017, RIGHC wrote to one of the assessors for the Town via email and asked for clarification as to why the 5.7 acres identified on the application as "farm & housing structures" under the "other land" category (line 5d) had been increased by 4.3 acres to 10.0 acres. (AR at 46). RIGHC did not receive a response to this inquiry. Having heard nothing further from the Town, RIGHC submitted an "Application for Abatement of Property Taxes" dated November 15, 2017, in the amount of $482,782 of property valuation.[5] (AR at 47). As pertinent here, the basis

---

[4] There were other notations on the "worksheet" utilized by the Town's assessors. For example, next to line 5a (farmland) and line 5c (forest land), someone had marked "ok." There were also comments written in line 5b (land unsuitable for farmland) that appear to relate to the 3 acres classified as "open space" on Marsh Island. (AR at 44).

[5] Having examined the entire administrative record in this matter, it appears to the court that the lack of communication from the Town was the result of the changes in those individuals who held the position of assessor for Jonesport. For example, the assessor who reviewed the application from RIGHC was not the same assessor who met with and spoke to RIGHC's representative in July, 2017, and he may not have been completely familiar with what the other assessor had done. Likewise, the assessor who testified before the State Board was not involved with RIGHC's initial application and had difficulty explaining the Town's position. The assessor who actually reviewed the application and made the modifications to it was unavailable as a witness before the State Board due to illness.

for the abatement request included the claim "that 4.3 acres had been added back to 'Farm & Housing Structures' from the 'Pasture' classification requested."[6] (AR. at 48). RIGHC explained its position as follows:

> The reallocation of the 4.3 acres to "Farm & Housing Structures" appears to be arbitrary, and is the subject of this appeal. It kept intact the same 10-acre block that the Assessor had in previous years allocated to "Acres-Site" in the tax cards. This reallocation was made despite the submission of an aerial map clearly delineating the acreage in question (attached), that is used as pasture for sheep, cows and the growing of grass and hay.

(AR at 48).

On December 28, 2017, the Town assessors informed RIGHC that it was still reviewing its abatement request and asked for additional information. Nevertheless, the assessors advised RIGHC that "we are denying your abatement request . . . We believe the ten acres you are questioning is part of the base-lots for the homes and out-buildings." (AR at 48).

RIGHC responded in a letter dated January 9, 2018 and provided the additional information requested by the assessors. It also expanded on its argument that it was entitled to an abatement. In essence, RIGHC contended that under the Farmland Tax Law, all land qualifying as woodland, agricultural land or horticultural land must be assessed first. What remains must be assessed at just value. RIGHC also questioned the Town's practice of assigning a "base lot" to each structure. (AR at 49).

In a letter dated January 24, 2018, the Town assessors denied the abatement request, stating:

> The Jonesport Board of Assessors have met and reviewed your letter of January 9, 2018. We have reviewed our tax records, maps, and laws.

---

[6] This is not entirely accurate. The 4.3 acres was, indeed, added to the "farm & housing structures" line (5d), but it was not deducted from the "pasture" line (5a). Rather, it was deducted from the "land unsuitable for farmland" line (5b). (AR at 44-45).

> We absolutely want to be fair, so we decided to contact Jeff Kendall at the Maine Property Tax Divisiou. After consulting with him, we have determined that the denial for abatement will stand. We are treating Roque Island the same as we treat the mainland property owners. Mr. Kendall advised us that we could, in fact, create a base-lot for each building on the island regardless of their proximity to each other or their uses. It has nothing to do with subdividing a parcel.

(AR at 50).

Following the denial of its abatement request by the Town, RIGHC filed a timely appeal to the State Board as permitted by 36 M.R.S. §§271(2)(A)(2) & 1118. The State Board held an evidentiary hearing on July 16, 2018 at which it received exhibits and testimony presented on behalf of RIGHC and the Town. (AR Vol. II). In particular, the State Board received testimony from: John Higgins, Finance Committee Chair for RIGHC; Stephanie Gardner, Farm Manager and Caretaker for Roque Island, and; Barbara Cirone, a Tax Assessor for the Town of Jonesport. The State Board heard some argument on July16, 2018, but also scheduled another day for closing arguments and deliberations on August 29, 2018. (AR. at 235).

When the State Board reconvened on August 29, 2018, it had received the written arguments of the parties. (AR at 53, 88). After wide-ranging deliberations, the State Board voted unanimously to deny the appeal filed by RIGHC. (AR at 435-38).

In a written Decision dated May 15, 2019, the State Board explained the reasoning for its denial of the appeal from the abatement request. The Chair of the State Board framed the issue by focusing on the Town's allocation of "one-acre site lots" to "10 substantial structures, both residential and farm-related, that were exempted from farmland classification." (AR at 17). For assessing purposes, it had been the Town's practice to allocate a "one-acre site lot" to each major building within a parcel of land. Utilizing

this methodology on RIGHC's application under the Farmland Tax Law had the result of increasing its overall assessment by increasing the acreage in the "other land" category (line 5d), which was assessed at just value. According to RIGHC, using this method violated 36 M.R.S. §1105, which requires the assessors to establish valuation of farmland based on its use for agricultural, horticultural or woodland purposes. Only after that was established were other areas to be valued on the basis of "just value."

Citing to Article IX, section 8 of the Maine Constitution, requiring that all taxes be "assessed equally according to just value," the State Board concluded:

> Here, the Town's methodology of first allocating 10 one-acre site lots to the buildings situated on the island, as was done for all similarly situated property on the mainland, is consistent with a reasonable interpretation of section 1105 and satisfies Maine constitutional requirements of just value and equality. Had the assessors done the opposite, as implied by RIGHC, by first assessing farmland acres (assuming all such areas for which classification was requested met the definition of farmland), then the assessors would not have been able to satisfy the Maine constitutional requirements of just value and equality for land associated with the 10 buildings on the island.

(AR at 21).

RIGHC filed a timely Petition for Judicial Review to this court on June 20, 2019. Briefing was completed on December 2, 2019 and oral argument was originally scheduled for January 24, 2020, but was continued at the request of RIGHC. Due to the outbreak of the coronavirus and the restrictions on court operations, oral argument could not be re-scheduled until May 22, 2020.

## STANDARD OF REVIEW

Generally speaking, when an administrative agency's decision is appealed pursuant to M.R.Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Servs.*, 664 A.2d 369, 370 (Me. 1995). "An

administrative decision will be sustaiued if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. The court will "not attempt to second-guess the agency on matters falling within its realm of expertise," meaning judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported," and the party seeking to overturn the agency's decision bears the burden of proving that there is no competent evidence in the record to support the Board's decision. *See Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 10, 90 A.3d 1131; *Bischoff v. Bd. of Trs.*, 661 A.2d 167, 170 (Me. 1995).

In the particular context of an appeal from the denial of a property tax abatement, there is a presumption that the tax assessment by the municipality is correct. *Roque Island Gardner Homestead Corp. v. Town of Jonesport*, 2017 ME 152. ¶ 12, 167 A.3d 564. To overcome this presumption, the taxpayer seeking an abatement must prove that the assessed valuation is "manifestly wrong" by showing: (1) that the taxpayer's property was substantially overvalued and an injustice resulted from the overvaluation; (2) that there was unjust discrimination in the valuation of the property; or (3) that the assessment was fraudulent, dishonest, or illegal. *Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 12, 90 A.3d 1131, 1135 (citing *Town of Bristol Taxpayer's Ass'n v. Bd. of Selectmen/Assessors for the Town of Bristol*, 2008 ME 159, ¶ 8, 957 A.2d 977). *See also Petrin v. Town of Scarborough*, 2016 ME 136, ¶ 14, 147 A.3d 842. The court should vacate the Board's decision that a taxpayer failed to meet its burden of showing one of those three circumstances "only if the record compels a contrary conclusion to the

exclusiou of any other inference." *Terfloth*, 2014 ME 57, ¶ 13 (internal quotations omitted). *Accord Roque Island v. Jonesport*, 2017 ME 152, ¶ 16.

**DISCUSSION**

After reviewing the briefs in this case multiple times, as well as the entire Administrative Record, the court is still not entirely confident that it fully understands the assessing methodology employed by the Town with respect to the application submitted by RIGHC under the Farmland Tax Law. As explained by the Town in its brief to the court, based on the testimony of Ms. Cirone at the State Board hearing, the Town of Jonesport has a town-wide policy of assessing one-acre site lots to buildings other than small out-buildings. *Respondent's Brief at 9*. As applied to RIGHC, the Town described its practice as follows:

> Roque Island has a total of 22 or 23 buildings on it, some large, some small. In the 'compound' area, there are six residential structures, a large main barn with solar panels, a large sheep barn, chicken coops, several other outbuildings including a maintenance building, a wood mill, and a walk-in freezer. There is also a generator building, a pier with a boat 'shop' and shed, and a cabin that [is] located outside of the compound area with a second pier. Finally, there are two cisterns.
>
> Barbara Cirone, one of the three Jonesport Assessors, testified for the Town. She testified that the Town assigns a one-acre 'base lot' (for undeveloped parcels) or a one-acre 'site lot' (for developed parcels) to all parcels in the Town of Joneport. The value of a base lot or site lot then depends on the zone in which it is situated. Every vacant property in town is assessed one base lot. Developed parcels in town are assessed one or more site lots based on the number of buildings located on a parcel. Ms. Cirone indicated that a one-acre site lot is assigned to every building on a property unless the structure is deemed by the assessors to be a small out-building. Ms. Cirone indicated in making the determination regarding whether a building should have a site lot assessed to it, she considered factors such as building footprint, use, whether there is water and electricity, and whether there is a slab foundation. She felt that these factors make a building equivalent to a boat shop on the mainland, and boat shops are assessed site lots. By way of illustration, Ms. Cirone testified that a garage with living

quarters would have its own site lot but a small garden shed purchased at Home Depot would not. The Town of Jonesport used this system throughout the Town, not just for islands. The same system for valuation was used for Petitioner's property as for all other similarly situated buildings in the Town of Jonesport.

In this case, Respondent assessed 10 site lots to Roque Island after seeking and receiving oral guidance from farmland specialists at Maine Revenue. Seven of the ten site lots were associated with residential buildings, including the camp located outside of the compound. For the non-residential structures, the Town did not assess site lots to out-buildings, only the larger buildings. Ms. Cirone testified that she would have assess[ed] a site lot to each of the residences, the barn, sheep barn, boat shop, wood shop, but not to a partially open shed with no heat or foundation or the chicken house, although the assessors at the time only assessed 10 site lots. John Higgins, Roque Island Finance Committee Chairman, acknowledged that respondent has historically assessed a 10-acre home site on the island going back 'a number of years,' but how far back he could not say.

*Respondent's Brief at 3-4.*

Ms. Cirone, as noted earlier, was not personally involved in reviewing the application submitted by RIGHC, but testified in general terms to the Town's assessing methodology. Moreover, there appears to be no dispute that prior to 2017, the Town had assessed a 10-ace site lot on Roque Island.

The parties have significantly different approaches to how the Farmland Tax Law should be applied in practice. For example, RIGHC's position is captured in the following quote from its brief to this court:

> The key is that with every piece of property, the farmland portion is first determined based on actual use as farmland and the definitions provided by statute. The farmland, including wasteland and woodlands, is entitled to be assessed in accord with the special requirements of the statute. It is only the remaining 'Other Lands' that the Town may assess based on the Town's traditional assessing procedures. Farmland first.

*Petitioner's Brief at 18 (emphasis added).*

The Town, on the other hand, insists that its town-wide site lot policy must be applied first:

> First, Respondent considered its town-wide site lot policy in evaluating the application. Respondent assess one-acre site lots to buildings on a property unless those buildings are small out-buildings. This is done town-wide. In determining whether a building should have a site lot assessed to it, Respondent considered factors such as building footprint, use, whether there were water and electricity, and whether there was a slab foundation. <u>Once site lots are assigned, remaining land is available for farmland designation.</u>

*Respondent's Brief at 9 (emphasis added).*

In their written arguments, both sides referred to and relied upon Section 5(F) of Property Tax Bulletin No. 20, pertaining to "Farm Structures" under the Farmland Tax Law and published by the Property Tax Division of Maine Revenue Services. The version of Section 5(F) in effect prior to April 9, 2020 provided:

> <u>Farm Structures.</u> Building components of a farm, such as animal shelters, are normally considered part of the farm and the structures should be valued in the same way as other similar structures in the municipality. While not specifically addressed in the law, when small accessory structures such as animal shelters are built upon classified farmland, the statute dos not compel the land under these structures to be withdrawn from classification.

Effective April 9, 2020, after the parties had fully briefed their arguments and prior to oral argument on May 22, 2020, the last sentence of Section 5(F) was changed to read: "While not specifically addressed in the law, when accessory structures such as animal shelters are built on classified farmland, that land may remain in the farmland program."

From the court's perspective, the Town's assessing practice of assigning one-acre site lots to buildings and structures creates a tension with the purposes and language of the Farmland Tax Law. That law was designed to subject tracts of

farmland, as defined, to special tax treatment. Its focus is on tracts of land, not structures. Both the Farmland Tax Law and Property Tax Bulletin No. 20, which is intended as a guide to the interpretation and application of the law, contemplate that buildings and structures on farmland will be assessed at just value as other similar buildings and structures are assessed in the municipality. The land on which the structures sit, however, can remain classified as "farmland."

The difficulty with the Town's practice of assigning one-acre site lots to farm structures is that it assesses the structure by using an acreage component. But the land itself, if properly classified as "farmland," must be valued to "reflect only the current value for farm purposes and may not include any increment of value reflecting development pressure." 36 M.R.S. §1108(1). The Town assigned 10-acre site lots to RIGHC based on its buildings and structures, regardless of whether the land itself was properly classified as "farmland." In order to make the total acreage equal 1,323 as documented in the application, the Town reassigned 4.3 acres from "land unusable for farmland" (wasteland) and classified it as "other land" ("farm & housing structures"). "Wasteland" is part of the statutory definition of "farmland." 36 M.R.S. §1102(4). By making this reclassification of farmland, without regard to its actual use, the Town appears to have assigned a value to the farmland (wasteland) that reflects development or market pressures, which is not permitted by the Farmland Tax Law.

The State Board and the Town emphasized the constitutional requirement that taxes upon real property be "apportioned and assessed equally according to the just value thereof." Art. IX, sect. 8, Me. Const. The Constitution also authorizes the Legislature to enact laws providing for the assessment of certain types of real estate based on its current use, such as farmland. Art. IX, sect 8(2)(A). The Farmland Tax Law also directs that "[a]reas other than woodland, agricultural land or horticultural land located within any parcel of farmland classified under this subchapter are

valued on the basis of just value." 36 M.R.S. §1105. Thus, with respect to "other land" or structures, the Town sought to treat those structures as similar structures would be treated in the municipality, and in doing do it utilized the one-acre site lot policy. But the Town's methodology of assigning one-acre site lots (for developed parcels) to farm structures, brings it into conflict with the Farmland Tax Law's directive to assess land classified as farmland based on its actual current use. While the Town can assess the farm structure at just value, it cannot convert land properly classified as "farmland" i.e., "wasteland," into a site lot as if it were a developed parcel.[7] As the court reads 36 M.R.S. §1105, "wasteland" within a parcel classified as farmland is to be valued on the basis of its just value as wasteland, not the just value of a site lot.

In the court's view, the Town's good faith effort to equalize the tax treatment of structures brought it into conflict with the Farmland Tax Law because of its one-acre site lot methodology. The burden on RIGHC in this appeal is a heavy one. In this case, however, the court believes that the site lot assessing methodology employed by the Town with respect to RIGHC's application under the Farmland Tax Law violated that law and was, therefore, manifestly wrong.

## CONCLUSION

The entry is:

The Petition for Judicial Review is GRANTED. The Assessors of the Town of Jonesport are directed to grant the Petitioner's abatement request for tax year 2017.

---

[7] The court would point out that in its examination of the application submitted by RIGHC under the Farmland Tax Law for tax year 2017, the Town did not indicate that it disagreed with how the application categorized the land. Rather, it reassigned 4.3 acres to "Other Land" in order to satisfy the 10-acre site lot allocation for Roque Island.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: June 3, 2020

William R. Stokes
Justice, Superior Court

Entered on the docket 6/4/2020

Action: 80C

MLR/SC#
235/20

J. Stokes

Roque Island Gardner Homestead
Corporation

vs

Town of Jonesport and State of Maine
Board of Property Tax Review

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ~~John B. Shumadine, Esq.~~ W/D<br>Murray Plumb & Murray<br>PO Box 9785<br>Portland, ME 04104-5085<br>Peter Murray, Esq.<br>Sage Friedman, Esq. | John K Hamer, Esq.<br>PO Box 1401<br>Bangor, Me 04402<br><br>Michelle Robert, AAG<br>6 State House Station<br>Augusta, ME 04333 |

## Date of Entry

| | |
|---|---|
| 06/21/19 | Petition for Review of Final Agency Action, filed (6/20/19). s/Shumadine, Esq. |
| 06/24/19 | Entry of Appearance filed, (0627/19) s/Hamer, Esq. |
| 07/08/19 | Motion to Dismiss, filed. s/Robert, AAG |
| 07/16/19 | Town of Jonesport's Response to State of Maine Board of Property Tax Review's Motion to Dismiss, filed (7/12/19). s/Hamer, Esq.<br>Town of Jonesport takes no position on the State of Maine Board of Property Tax Review's Motion to Dismiss |
| 07/17/19 | Certified Record, Summary Contents of Record, Audio Recordings of the Hearing and Deliberations and Written Decision of the Board of Property Tax Review, filed (7/16/19). s/Stevens, Clerk of the Board of Property Tax Review. |
| 07/17/19 | Notice & Briefing Schedule, issued.<br>Copy to parties/counsel |
| 07/26/19 | Entry of Appearance on behalf of Petitioner filed (7/25/19) s/Murray, Esq. |
| 07/30/19 | Roque Island Gardner Homestead Corporation has no objection to Motion to Dismiss, Filed, (7/29/19) s/Murray, Esq. |
| 08/13/19 | Notice of Withdrawal of Counsel, filed (8/9/19). s/Shumadine, Esq. |
| 08/16/19 | Motion to Amend Scheduling Order and To Enlarge Deadlines, filed. s/Murray, Esq. |