MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 152
Docket:      BCD-15-112
Argued:      December 8, 2015
Decided:     October 13, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

ANGELL FAMILY 2012 PROUTS NECK TRUST et al.

v.

TOWN OF SCARBOROUGH et al.

******

KENYON C. BOLTON III et al.

v.

TOWN OF SCARBOROUGH et al.

HJELM, J.

[¶1]    In our recent decision in *Petrin v. Town of Scarborough*, 2016 ME 136, --- A.3d ---, we considered challenges to increases in municipal property taxes for parcels located in several neighborhoods in the Town of Scarborough.   We determined that although the Scarborough Board of Assessment Review did not err by concluding that a partial revaluation conducted by the Town was proper, the Town's practice of undervaluing

separate but abutting lots held in common ownership resulted in discriminatory tax treatment. *See id.* ¶ 45.

[¶2] In this separate action, which is based on a separate record, we address similar challenges brought by Kenyon C. Bolton III and other owners of residential waterfront properties[1] located in Prouts Neck, which is an area of Scarborough that was not at issue in *Petrin*. The plaintiffs (collectively, the Taxpayers) appeal from a judgment entered in the Business and Consumer Docket (*Horton, J.*) concluding that they do not have standing to pursue one of their challenges but otherwise affirming the Board's denial of their tax abatement petitions. For reasons similar to those in *Petrin*, we determine that the Taxpayers in this case have standing to pursue all of their challenges. Additionally, although we affirm the Board's conclusion that the partial revaluation was proper, we conclude that the Board erred by denying the Taxpayers' requests for abatement based on the Town's practice of undervaluing abutting lots, which resulted in discriminatory assessments.

---

[1] The appellants are Kenyon C. Bolton III; Bolton Juniper Ledge Trust; Matford Holding, Inc.; Eileen D. Gillespie Trust; Edward P. Maynard Trust; Martha F. Hallward; Nan T. McEvoy 1997 GRAT; Boyle Trust and Investment Company; Frank A. and Sarah Olson; CPC Maine, LLC; Angell Family 2012 Prouts Neck Trust; JG Bartol Trust FBO Anne Butterfield; JB Bartol FBO T.C. Bartol; CBS Family Trust FBO Anne Butterfield; CBS Family Trust FBO T.C. Bartol; Mandalay Realty LLC; 30 Saccarappa LLC; Lee T. Sprague; J. Hunter Walton Jr. 1979 Family Trust; and 26 Jocelyn Road Nominee Trust.

We therefore vacate the judgment and remand to the Business and Consumer Docket with instructions to remand to the Board for further proceedings.

## I. BACKGROUND

[¶3] After holding a hearing, the Board made the following findings of fact, which are based on competent evidence in the record. *See Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 10, 90 A.3d 1131.

[¶4] Scarborough last conducted a valuation of all properties located in the Town for purposes of municipal tax assessments in 2005. The Town Assessor, however, continually monitors hundreds of sales of Scarborough property and conducts studies to ensure that assessment-to-sales ratios— both in individual neighborhoods and town-wide—are as close as possible to 100%. In 2012, based on an ongoing analysis of sales data, then-Town Assessor Paul Lesperance reassessed parcels of land in certain Scarborough neighborhoods. The partial revaluation resulted in increased assessments for waterfront properties in three areas, including Prouts Neck, and for interior properties in a fourth neighborhood. Each of those neighborhoods constitutes a distinct market that cannot be compared to other areas in the Town.

[¶5] For Prouts Neck, the data, which consisted of eight property sales, showed that waterfront properties were selling for significantly more than

4

their assessed values. As a result of the revaluation, assessments of those properties increased by 10-15%. Prouts Neck is a unique neighborhood with amenities, including a golf course, beach club, and yacht club, that enhance the value of properties located there. Lesperance did not increase assessments of waterfront properties in a separate neighborhood, Piper Shores, which is not comparable to Prouts Neck because it is a significant distance from the Prouts Neck amenities and because the parcels there are generally larger.

[¶6] In early 2013, the Taxpayers, who separately own seventeen parcels of land in Prouts Neck, each applied for a tax abatement pursuant to 36 M.R.S. § 841(1) (2015).[2] In their applications, the Taxpayers alleged that the partial revaluation unjustly discriminated against them because it resulted in increased assessments for their properties but not for other similarly situated properties.[3] Lesperance denied the applications, and the Taxpayers appealed to the Board. *See* 36 M.R.S. § 843(1) (2015). By agreement of the parties, the Board consolidated the appeals and held a two-day public hearing in December 2013 and January 2014. The evidence at the hearing focused both on the partial revaluation and an "excess land" policy, which affects the

[2] Owners of a total of twenty parcels filed abatement applications and appealed to the Board after Lesperance denied them. Of those taxpayers, the owners of seventeen parcels pursue their challenges here.

[3] The Taxpayers also alleged that their properties were substantially overvalued. On this appeal, the Taxpayers pursue only their challenge based on unjust discrimination. *See infra* n.4.

Town's valuation of lots larger than one acre and abutting lots in common ownership.

[¶7]  In a written decision issued in March 2014, the Board denied the Taxpayers' consolidated appeals.  The Board endorsed the Town's practice of assessing a lot in common ownership with a second abutting lot "at a significantly lower rate," finding that the impact of the "policy was minor and did not make the assessments discriminatory."  With respect to the partial revaluation, the Board found that Lesperance's reliance on the eight property sales in Prouts Neck was reasonable and that the data confirmed that the assessment-to-sales ratio there was "significantly less" than 100%, justifying the increased assessments.  The Board further concluded that, in contrast to Prouts Neck, there was an insufficient number of sales in Piper Shores to justify an increase in assessments there and that in any event, the two neighborhoods are not comparable.  The Board also noted that Maine Revenue Services (MRS) had reviewed the market data for the waterfront areas affected by the revaluation and had "concluded that the Town's assessment methodology was sound and acceptable."

[¶8]  Overall, the Board concluded that Lesperance's "appraisal techniques were thorough and well-grounded in expert assessing

6

methodology" and that the Taxpayers had not met their burden of establishing that the assessments were "manifestly wrong" or discriminatory.

[¶9]   In two groups, the Taxpayers filed complaints in the Superior Court (Cumberland County) pursuant to M.R. Civ. P. 80B(a) and 36 M.R.S. § 843, appealing the Board's decision denying their requests for tax abatements.   The two actions were consolidated and transferred to the Business and Consumer Docket.   In February 2015, the court entered a judgment affirming the Board's decision.   The court concluded that the Taxpayers did not have standing to challenge the Town's excess land programs and affirmed the Board's decision on the remaining challenges.   The Taxpayers appealed to us.  *See* 14 M.R.S. § 1851 (2015).

## II.  DISCUSSION

[¶10]   The Taxpayers argue that they have standing to challenge the Town's "excess land" assessment practices and that the evidence in the record compelled the Board to find that those practices have a discriminatory impact that is adverse to their interests.   They then argue that they are entitled to abatements because the assessments resulting from the 2012 partial revaluation were based on flawed data and arbitrarily focused on certain waterfront properties.

[¶11]   When considering an appeal from a decision of the Superior Court

> in an action seeking review of a tax assessment, we review the Board's decision directly for abuse of discretion, errors of law, and sufficient evidence.   That the record contains evidence inconsistent with the result, or that inconsistent conclusions could be drawn from the evidence, does not render the Board's findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the Board's conclusion.

*Terfloth*, 2014 ME 57, ¶ 10, 90 A.3d 1131 (alterations omitted) (citation omitted) (quotation marks omitted).

[¶12]   The legal standards we identified in *Petrin* as applying to municipal property tax assessments also govern our analysis here, and we do not reiterate them in full.   We do note, however, that "[a] town's tax assessment is presumed to be valid."   *Ram's Head Partners, LLC v. Town of Cape Elizabeth*, 2003 ME 131, ¶ 9, 834 A.2d 916.   A taxpayer bears the affirmative burden of rebutting that presumption by proving that the assessed value of his or her property is "manifestly wrong" because it was affected by "unjust discrimination."[4]   *Id.* (quotation marks omitted); *see also Allegheny Pittsburgh Coal Co. v. Cty. Comm'n*, 488 U.S. 336, 343 (1989) (stating that the

---

[4] A taxpayer may also seek to prove that an assessment is "manifestly wrong" by demonstrating that the property was substantially overvalued or that the assessment was affected by fraud, dishonesty, or illegality. *Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 12, 90 A.3d 1131.  In this action, the Taxpayers do not assert such challenges.

Equal Protection Clause of the United States Constitution requires a "rough equality in tax treatment of similarly situated property owners"). This requires the taxpayer to establish "that the assessor's system necessarily results in unequal apportionment." *Ram's Head*, 2003 ME 131, ¶ 10, 834 A.2d 916 (quotation marks omitted).

[¶13] Because the Board concluded that the Taxpayers failed to meet their burden of proving unjust discrimination, we will vacate the Board's decision "only if the record compels a contrary conclusion to the exclusion of any other inference." *Terfloth*, 2014 ME 57, ¶ 13, 90 A.3d 1131 (quotation marks omitted).

[¶14] We address the Taxpayers' challenge to the Town's excess land programs before considering their remaining contention that the partial revaluation was improper.

A. The Town's Large Lot and Abutting Property Programs

[¶15] As we explained in *Petrin* and as shown in the present record, the Town engages in two distinct practices that the Board and the Taxpayers describe as the "excess land" program. The first practice concerns the Town's method for valuing single residential lots that are larger than one acre (the "large lot" program), and the second involves the Town's practice of

permitting owners of multiple contiguous lots to combine those lots for assessment purposes (the "abutting property" program).

[¶16] As Lesperance testified, under the large lot program, the first acre of a larger single parcel is valued at one rate, and the remainder is assessed at a lower rate, because the portion of the parcel in excess of the one-acre "home site" contributes proportionally less—and sometimes even nothing—to the lot's overall value. The abutting property program, on the other hand, allows a taxpayer who owns multiple abutting lots to elect to have the separate lots assessed as a single unit. Based on the same principle that results in a reduced valuation of a *single* lot, the abutting property program results in a lower overall valuation of the two lots than if they were assessed independently of each other.

[¶17] Focusing on the abutting property program, the court concluded that because that valuation practice is applied throughout the Town, the Taxpayers have not demonstrated the "particularized injury" necessary to support standing to seek remedial relief. As we explained in *Petrin*, however, taxpayers whose properties do not qualify for the large lot or abutting property programs do have standing to challenge those programs because they do not benefit from the favorable tax treatment that the Town gives to

owners of qualifying lots.  2016 ME 136, ¶ 21 & n.6, --- A.3d ---.  None of the Taxpayers owns property that qualifies for the abutting property program, and they have standing to challenge that practice.  Further, because at least some of the Taxpayers' properties at issue here are smaller than one acre, we reach the merits of the Taxpayers' challenge to the large lot program.

      1.     Abutting Property Program

[¶18]  The Taxpayers first challenge the abutting property program, which results in a cumulative lower assessment of abutting, commonly-owned parcels than if the parcels were assessed separately.  As Lesperance testified before the Board, when this methodology is used, the taxpayer gets a "major benefit" and a "break."

[¶19]  Pursuant to Maine law, an individual parcel of real estate must be assessed separately according to just value.  *See* Me. Const. art. IX, § 8 ("All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally *according to the just value thereof*." (emphasis added)); 36 M.R.S. § 708 (2015) (stating that for each tax year, the assessor "shall estimate and record *separately* the land value, exclusive of buildings, of *each parcel of real estate*" (emphasis added)).  For the same reasons we explained in *Petrin*, the Town's abutting property program

violates the requirement, established in Maine law, that each parcel be assessed separately according to its just value. 2016 ME 136, ¶¶ 27-28, --- A.3d ---.[5]

[¶20]  Further, on this record, the Board was compelled to conclude that the abutting property program resulted in an unequal apportionment of the tax burden. *See Ram's Head*, 2003 ME 131, ¶ 10, 834 A.2d 916.  The Taxpayers have made this showing through Lesperance's testimony that other taxpayers receive a "major benefit" and a "break" as a result of the abutting property program.  "This necessarily means that those who do not own abutting lots are subjected to taxes that are not imposed on owners of lots that happen to be abutting . . . [and] contravenes the Taxpayers' rights of equal protection." *Petrin*, 2016 ME 136, ¶ 31, --- A.3d ---.  Additionally, the Taxpayers presented evidence of specific examples where an owner of a qualifying parcel pays less property taxes than does an owner of a comparable, non-qualifying parcel.

[¶21]   Because the abutting property program "subject[s] [the Taxpayers] to taxes not imposed on others of the same class," *Hillsborough v. Cromwell*, 326 U.S. 620, 623 (1946), it necessarily results in an unequal

---

[5] Pursuant to 36 M.R.S. § 701-A (2015), a municipality is authorized to combine contiguous lots for purposes of tax assessments but only under specified circumstances, including a minimum lot size of five acres.  This statute is inapplicable here.

apportionment of the tax burden, and the Taxpayers are entitled to an abatement for the 2012 tax year, *see Petrin*, 2016 ME 136, ¶ 32, --- A.3d ---.

2.    Large Lot Program

[¶22]   The Taxpayers also contend that the evidence in the record compelled the Board to find that the large lot program—which applies to the valuation of a single parcel that is larger than one acre—is unjustly discriminatory.

[¶23]  As we explained in *Petrin*, "[s]o long as an assessment represents a fair and just determination of value for the parcel as a whole, no constitutional harm has occurred."  *Id.* ¶ 36 (quotation marks omitted).  The Board was entitled to find, based on Lesperance's testimony, that the large lot program results in assessments that reflect just value and that the Taxpayers therefore did not meet their burden of proving that the program is unjustly discriminatory.[6]

B.    The 2012 Partial Revaluation

[¶24]   The Taxpayers next challenge the 2012 partial revaluation, asserting that the evidence compelled the Board to find that it resulted in

---

[6] As in *Petrin*, the Board's decision in this case explicitly addressed only the abutting property program.  The Board's general finding that Lesperance "did not use systematic or intentional methods to create a disparity in valuations," however, constitutes at least an implied finding that the large lot valuation methodology was proper.

inequitable assessments of certain waterfront properties in Prouts Neck because Lesperance (1) failed to present a legitimate justification for targeting that area, and (2) improperly determined that assessments of waterfront properties in Piper Shores should not be increased.[7]

[¶25]  As we reiterated in *Petrin*, "although townwide revaluations are perhaps the best method of maintaining equal apportionment of the tax burden, assessors are not precluded from adjusting assessments for selected properties between townwide revaluations if such adjustments will achieve greater equality."  *Id.* ¶ 38 (alterations omitted) (quotation marks omitted). Revaluations "need not attain absolute equality . . . ; rather, only rough equality is required."  *Id.* (quotation marks omitted); *see also Allegheny*, 488 U.S. at 343 ("[T]he constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.").

---

[7]  The Taxpayers also complain, in a footnote, that the Board was compelled to find that Lesperance arbitrarily failed to increase assessments for four waterfront properties in Prouts Neck, and therefore discriminated against the Taxpayers.  This argument is not persuasive because the Board was entitled to find, based on Lesperance's testimony, that the assessments for these properties did not establish unjust discrimination. *See Kittery Elec. Light Co. v. Assessors of the Town of Kittery*, 219 A.2d 728, 740 (Me. 1966) (stating that "[s]poradic differences in valuations do not spell invidious discrimination, intentional or constructive").

14

### 1.    Justification for Increased Assessments

[¶26]  The Taxpayers argue that Lesperance increased assessments of certain waterfront properties in Prouts Neck based *solely* on his determination that the economic downturn of 2008 did not affect that area, which, they argue, is not supported by the evidence.  Contrary to their contention, however, Lesperance's decision to revalue Prouts Neck properties was legitimately grounded in his ongoing analysis of sales data and was not based solely on his opinion about the effect of the recession.

[¶27]   As Lesperance testified, at the time of the revaluation, the assessments of residential properties in most areas of the Town were close to 100% of their market value.  In contrast, market data—consisting of eight property sales—revealed that on average, since 2005, waterfront properties in Prouts Neck had been selling for significantly *more* than their assessed values.  Lesperance therefore increased the assessments of Prouts Neck waterfront properties to bring the average assessment-to-sales ratio there closer to 100%.  A post-valuation study conducted by Lesperance confirmed that the revaluation achieved the intended effect: the average assessment ratio in the Prouts Neck waterfront increased from 83% before the revaluation to 93% afterwards.  Additionally, the Director of the Property Tax

Division for MRS testified that MRS had reviewed the market data for the waterfront areas affected by the revaluation and had concluded that the revaluation improved the equity of the Town's assessments.

[¶28]  The Taxpayers argue that for two reasons the eight property sales on which Lesperance relied do not adequately support his decision to increase assessments in Prouts Neck.  First, they argue that four of the sales do not provide reliable evidence of current fair market value because they occurred before the 2008 recession.  Contrary to their contention, however, the evidence supports the Board's conclusion that waterfront property values in Prouts Neck "remained strong between the years 2006-2011," and that therefore it was proper for Lesperance to rely on pre-2008 sales data.

[¶29]  Second, the Taxpayers argue that three of the four remaining sales failed to reflect fair market value because they were not arm's length transactions.  As we have previously explained, municipalities have a constitutional obligation to assess real estate at "just value," Me. Const. art. IX, § 8, which is equivalent to "market value," *Weekley v. Town of Scarborough*, 676 A.2d 932, 934 (Me. 1996).  "Market value" is the "price a willing buyer would pay a willing seller at a fair public sale."  *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 173 (Me. 1974), *superseded by statute on other*

*grounds by* P.L. 1977, ch. 694, § 694 (effective July 1, 1978); *see also Shawmut Inn v. Town of Kennebunkport*, 428 A.2d 384, 395 (Me. 1981) (stating that in determining market value, "[t]he weight to be given to the sale price . . . depends upon the petitioner's ability to show that the sale price was indicative of the price a willing buyer would pay in a free and open market").

[¶30]  Here, the Board accepted the testimony of one of the Taxpayers' experts that several sales in Prouts Neck were "private," but rejected the expert's conclusion that the sales were not arm's length transactions.  The Board reasoned that the witness "did not present credible evidence that any private sales were entered into unwillingly or [were] the result of undue pressure."  Although these sales lacked one of the characteristics of an arm's length transaction, the evidence does not establish that the prices were not "typical of [those] arrived at in the open market where willing buyers and sellers meet on equal terms." *Arnold v. Me. State Highway Comm'n*, 283 A.2d 655, 659 (Me. 1971).  The Board was therefore not required to conclude that the resulting sale prices were not reflective of fair market value.

[¶31]  Because the Board was entitled to find that Lesperance's reliance on the eight waterfront property sales in Prouts Neck was reasonable, and because those sales showed that the assessment-to-sales ratio there was less

than in other residential areas, the Board was not compelled to conclude that Lesperance lacked a legitimate basis for increasing assessments of the Taxpayers' properties.

### 2. Piper Shores Properties

[¶32]  The Taxpayers next contend that the evidence compels the conclusion that Lesperance's decision to increase assessments of waterfront properties in Prouts Neck, but not of comparable properties in Piper Shores, constitutes unjust discrimination.  The basis for this argument is evidence of the sale of one Piper Shores parcel for a price that was approximately 15% above its assessed value, which Lesperance excluded from his calculations.

[¶33]  Municipalities have a constitutional obligation to achieve "a rough equality in tax treatment of *similarly situated property owners*." *Allegheny*, 488 U.S. at 343 (emphasis added).  As the Board found based on competent evidence, however, the waterfront properties in Piper Shores are not similarly situated to those in Prouts Neck.  The Piper Shores properties

are generally larger[8] and are located a significant distance from the Prouts Neck amenities.[9]

[¶34] Additionally, the new Town Assessor testified that the single Piper Shores sale was "questionable" and was not a reliable indicator of market value, because it was enrolled in a tax program that limited the use of the parcel and that disqualified the property from being included in the annual sales ratio studies submitted to MRS. Both assessors testified that, moreover, a single sale was an insufficient basis for revaluing the Piper Shores neighborhood, and Lesperance stated that the sale was transacted after the April 1, 2012, cutoff date that he had adopted for the revaluation.

[¶35] Based on this cumulative evidence, the Board was not compelled to conclude that the Town unjustly discriminated against the Taxpayers in favor of landowners in Piper Shores. *See Terfloth*, 2014 ME 57, ¶ 13, 90 A.3d 1131.

---

[8] The Board was presented with evidence that Piper Shores encompasses twenty large, waterfront parcels along approximately two miles of coastline, while Prouts Neck includes fifty-one waterfront parcels along a coastline that is roughly the same length.

[9] The Taxpayers argue that there is no evidence in the record to support the Board's finding that the amenities in Prouts Neck—including a golf course, beach club, and yacht club—"enhance the values of the properties located there." Contrary to their contention, however, one of the Taxpayers' own experts wrote in an appraisal document that was admitted in evidence that "Prouts Neck is a unique market" with a beach club, yacht club, and country club, and that values of certain waterfront properties there "still appear[ed] to be strong" even following the economic downturn of 2008.

### III. CONCLUSION

[¶36]  The Board did not err by concluding that the Taxpayers failed to meet their burden of proving that the 2012 partial revaluation was unjustly discriminatory.  As in *Petrin*, however, the evidence here "compels the conclusion that the Town's method of assessing separate but abutting parcels held in common ownership resulted in unequal apportionment because that methodology necessarily deprives the Taxpayers of a rough equality in tax treatment of similarly situated property owners."  2016 ME 136, ¶ 45, --- A.3d --- (quotation marks omitted).  We therefore remand this action to the Business and Consumer Docket with instructions to remand to the Board for a determination of the appropriate abatements.

The entry is:

> Judgment vacated.  Remanded to the Business and Consumer Docket with instructions to remand to the Scarborough Board of Assessment Review for further proceedings consistent with this opinion.

**On the briefs:**

William H. Dale, Esq., and Tudor N. Goldsmith, Esq., Jensen Baird Gardner & Henry, Portland, for appellants Kenyon C. Bolton III et al.

Jonathan A. Block, Esq., and Kris Eimicke, Esq., Pierce Atwood LLP, Portland, for appellants Angell Family 2012 Prouts Neck Trust et al.

Robert J. Crawford, Esq., and N. Joel Moser, Esq., Bernstein Shur, Portland, for appellee Town of Scarborough et al.

**At oral argument:**

William H. Dale, Esq., for appellants Kenyon C. Bolton III et al. and Angell Family 2012 Prouts Neck Trust et al.

Michael A. Hodgins, Esq., Bernstein Shur, Portland, for appellee Town of Scarborough et al.

Business and Consumer Docket docket number CV-2014-59

FOR CLERK REFERENCE ONLY