MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 172
Docket:       Cum-19-73
Argued:       September 24, 2019
Decided:      December 23, 2019
Revised:      April 9, 2020

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN,* JABAR, and HJELM, JJ.

KENYON C. BOLTON III et al.

v.

TOWN OF SCARBOROUGH

ALEXANDER, J.

[¶1]  Three years ago, we concluded that the Town of Scarborough had engaged in an unlawful and discriminatory assessment practice that violated the equal protection rights of Kenyon C. Bolton III and other plaintiffs (collectively, the Taxpayers); based on this conclusion, we remanded the matter to the Scarborough Board of Assessment Review "for a determination of the appropriate abatements" to address the inequality in tax treatment affecting the Taxpayers as a result of the discriminatory practice. *Angell Family 2012 Prouts Neck Tr. v. Town of Scarborough*, 2016 ME 152, ¶¶ 1-2, 15-21, 36,

---

* Although not available at oral argument, Justice Gorman participated in the development of this opinion.  *See* M.R. App. P. 12(a)(2) ("A qualified Justice may participate in a decision even though not present at oral argument.").

149 A.3d 271 [hereinafter *Angell*]; *Petrin v. Town of Scarborough*, 2016 ME 136, ¶¶ 2, 8-9, 18, 23-32, 45, 147 A.3d 842.

[¶2]   In this consolidated appeal, we now consider whether the abatements formulated by the Board and reviewed by the Superior Court after our remand pass constitutional muster.  Because we conclude that the Board's decision granting the Taxpayers eight percent abatements to their land values, as recommended to the Board by the Town, satisfies constitutional requirements, we vacate the judgment of the Superior Court (Cumberland County, *Horton, J.*) and remand with the direction to affirm the Board's original decision after remand.

## I.  CASE HISTORY

[¶3]   The issues before us stem from the Town's former practice of allowing any owner of two separate but abutting parcels, one of which was undeveloped, to request that those parcels be valued as if they were a single lot to attain a lower overall assessment than if the parcels were valued separately. *See Angell*, 2016 ME 152, ¶¶ 15-16, 149 A.3d 271; *Petrin*, 2016 ME 136, ¶ 8, 147 A.3d 842.

[¶4]  In our previous opinions, we concluded that the Board had erred in denying the Taxpayers' abatement requests because the abutting lot program

violated the statutory requirement that each parcel of real estate be assessed separately, *see* 36 M.R.S. § 708 (2018), and the constitutional requirement that real estate be assessed at its just value, *see* Me. Const. art. IX, § 8. *See Angell*, 2016 ME 152, ¶ 19, 149 A.3d 271; *Petrin*, 2016 ME 136, ¶¶ 26-29, 147 A.3d 842. We further held that because the abutting lot program violated Maine law and imposed property taxes on the Taxpayers at rates that were not imposed on similarly situated owners of lots that happened to be abutting other lots of those owners, it contravened the Taxpayers' rights to equal protection. *See Angell*, 2016 ME 152, ¶¶ 20, 36, 149 A.3d 271; *Petrin*, 2016 ME 136, ¶¶ 29-31, 45, 147 A.3d 842.

[¶5] Respecting our direction on remand that it provide the Taxpayers with appropriate abatements to address this inequality, the Board conducted hearings on the issue in early 2017. Because the Town had continued to implement the program, and most of the Taxpayers had continued to file yearly abatement requests during the intervening years between their initial requests and our decisions in 2016, the parties agreed to expand the scope of the proceedings to allow the Board to determine the appropriate abatements for

the four tax years in question—which was labeled the "abatement period."[1] The Board received exhibits from both sides and heard extensive testimony from the Town's Special Deputy Assessor regarding the impact of the abutting lot program on both the Town in general and each of the Taxpayers who were parties to the proceeding.

[¶6]  At the conclusion of the hearings, the Town urged the Board to grant the Taxpayers eight percent abatements to their land values because the total dollar amount of such abatements would be approximately equal to the total dollar amount of taxes avoided by the owners participating in the abutting lot program over the abatement period.  The Taxpayers contended that they were entitled to 31.48 percent abatements to their land values, which, by their calculations, was the average discount that the abutting lot program participants received to their combined land values.

---

[1] Those tax years were 2012-13, 2013-14, 2014-15, and 2015-16.  In our 2016 decisions, we said only that the Taxpayers were "entitled to an abatement for the 2012 tax year." *Angell Family 2012 Prouts Neck Tr. v. Town of Scarborough*, 2016 ME 152, ¶ 21, 149 A.3d 271; *Petrin v. Town of Scarborough*, 2016 ME 136, ¶ 32, 147 A.3d 842.  The Board's decision to consider abatements for the other years in which the discriminatory program affected the Taxpayers is a reasonable extrapolation of our directions.  Complicating matters slightly, not all of the Taxpayers filed abatement requests for each of the years at issue.  In their brief, the Taxpayers assert that "the parties have agreed that those variances present only a ministerial issue, [and] are not material to the remedy here."

[¶7] In May 2017, after deliberating, the Board voted unanimously to adopt a written decision granting the Taxpayers eight percent abatements to their land values—exclusive of any improvements—for each year during the abatement period in which they filed abatement requests. The Board explained that because the combined value of these abatements was equal to the total amount of taxes avoided by the abutting lot program participants during the abatement period, the eight percent figure provided each Taxpayer with a proportionate share of the total benefit of the program.

[¶8] The Taxpayers appealed to the Superior Court, *see* 36 M.R.S. § 843 (2018); M.R. Civ. P. 80B, which entered a judgment vacating the Board's decision based on its conclusion that the Board's abatement formula was unreasonable because it made the percentage discount a function of the number of appealing Taxpayers. The court remanded the matter to the Board with instructions to provide the Taxpayers with abatements that would place them "in a position roughly equal to the favored abutting lot owners."

[¶9] On remand from the Superior Court, the Board held an additional hearing where the parties mostly relied on the evidence introduced in the prior proceedings. The Taxpayers continued to assert that their proposal of 31.48 percent abatements was the most appropriate way to remedy the inequality.

The Town maintained that the Board's decision to grant eight percent abatements was legally sufficient, but alternatively suggested a different method for calculating abatements to comply with the Superior Court's directions.

[¶10] Following deliberations, the Board unanimously voted to adopt a written decision in June 2018. In its decision, the Board accepted "the Superior Court's conclusion that . . . [its] May 10, 2017 decision was unreasonable, and not in conformity with Maine law" and determined that the Taxpayers were entitled to 14.74 percent abatements to their land values. To reach that percentage, the Board made the following calculations for each year of the abatement period:

1. It divided the aggregate tax savings for abutting lot program participants by the number of program participants to calculate *the average tax dollar savings per abutting lot program participant*.

2. It multiplied the average tax dollar savings per abutting lot program participant by the number of appealing Taxpayers to calculate *the average abutting lot program benefit*.[2]

3. It divided the average abutting lot program benefit by the total value of the appealing Taxpayers' land multiplied by the applicable mil rate to calculate *the percentage reduction*.

---

[2] As the Taxpayers point out, it is a misnomer to call this figure the average abutting lot program benefit because its formula includes the number of Taxpayers who filed abatement requests. The Town more aptly calls the figure the "Total Abatement Principal."

The Board then averaged the yearly percentage reductions, which resulted in the 14.74 percent figure.

[¶11] Once again, the Taxpayers appealed to the Superior Court. The Town also appealed to preserve its argument that the original eight percent abatements were sufficient. In January 2019, the Superior Court entered a judgment affirming the Board's decision granting the Taxpayers 14.74 percent abatements after finding that the Board's formula was rational and reasonable.[3] The Superior Court's judgment being final, *see* M.R. Civ. P. 80B(n), the Taxpayers appealed to us, and the Town cross-appealed seeking reinstatement of the eight percent abatements, *see* M.R. App. 2B(c)(1), 2C(a)(2).[4]

## II.  LEGAL ANALYSIS

[¶12] The Taxpayers contend that the Equal Protection Clause mandates that they be extended the same discounts that were provided to participants in the abutting lot program. They assert that neither of the Board's abatement

---

[3] The court modified the interest rate calculation in the Board's second decision, but that issue is moot in light of our conclusion that the Board's original decision provided adequate relief. *See infra* n.9.

[4] M.R. Civ. P. 80B(m) provides that when, as here, "the Superior Court remands the case for further action or proceedings by the governmental agency, the Superior Court's decision is not a final judgment, and all issues raised on the Superior Court's review of the governmental action shall be preserved in a subsequent appeal taken from a final judgment entered on review of such governmental action."

formulas accomplishes this, and that the most appropriate abatements would provide them with a 31.48 percent discount to their land assessments, which they maintain is the average percentage discount received by the abutting lot program participants.

A.     Standard of Review and Statutory Requirements

[¶13]  When a party appeals a decision of the Superior Court in an action seeking review of decisions by a municipal Board of Assessment Review, "we review the Board's decision[s] directly for abuse of discretion, errors of law, and sufficient evidence."  *Petrin*, 2016 ME 136, ¶ 13, 147 A.3d 842.  "That the record contains evidence inconsistent with the result, or that inconsistent conclusions could be drawn from the evidence, does not render the Board's findings invalid if a reasonable mind might accept the relevant evidence as adequate to support the Board's conclusion."  *Terfloth v. Town of Scarborough*, 2014 ME 57, ¶ 10, 90 A.3d 1131 (alterations omitted).

[¶14]  Although the Superior Court and the Board gave significant weight to the requirement of 36 M.R.S. § 843(1) that any abatement provided by the Board be "reasonable," our case law suggests that an abatement is reasonable if it does not represent an abuse of discretion or error of law.  *See City of*

*Biddeford v. Adams*, 1999 ME 49, ¶¶ 24-25, 727 A.2d 346. Thus, our standard of review encompasses the reasonableness requirement.

[¶15] The more significant effect of section 843 on our review is that it limits our ability to substitute our own judgment for that of the Board. *See So. Portland Assocs. v. City of South Portland*, 550 A.2d 363, 369 (Me. 1988) (stating that we will not intrude on the authority that 36 M.R.S. § 843(1) grants to Boards of Assessment Review by substituting our own value estimates or acting "as final-offer arbitrators" to resolve opposing figures); *see also Weekley v. Town of Scarborough*, 676 A.2d 932, 934 (Me. 1996) (holding that courts lack the authority to determine the just value of properties or "grant relief in the nature of an abatement").

[¶16] We find no merit in the Taxpayers' argument that we should depart from this deferential standard because the Board is "hopelessly biased" against them. The aspects of the record that the Taxpayers allege demonstrate "bias" merely show the Board members—who are not lawyers—grappling with a complicated area of the law and an equally complex set of facts.

B.   Constitutional Considerations

[¶17] As discussed above, we previously determined that the abutting lot program was unlawfully discriminatory and violated the Taxpayers' equal

protection rights.[5]   While our instruction on remand was for the Board to provide the Taxpayers with appropriate abatements to remedy this inequality, we recognize that this was a challenging directive given the complicated and unsettled nature of this area of the law. *See Adams*, 727 A.2d at 351 (noting that neither "Maine case law nor the tax abatement statute provide guidance on the appropriate remedy for unjust discrimination").   The somewhat tortured progression of this matter after our remand demonstrates a need for further guidance regarding the range of proper remedies in circumstances like these.

[¶18]   The United States Supreme Court has explained that "when unlawful discrimination infects tax classifications or other legislative prescriptions, the Constitution simply calls for *equal treatment*.  How equality is accomplished . . . is a matter on which the Constitution is silent."  *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426-27 (2010).  A state "found to have

---

[5] Although we reiterate our previous conclusion that the abutting lot program violated the Equal Protection Clause, not every tax classification that violates state law violates the Federal Constitution. *See Armour v. City of Indianapolis*, 566 U.S. 673, 687-88 (2012) (cautioning against the risk of "transforming ordinary violations of ordinary state tax law into violations of the Federal Constitution").  Generally, a tax classification involving neither a fundamental right nor a suspect class "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 680 (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)).  The case at hand presents a rare situation, like in *Allegheny Pittsburgh Coal Co. v. Cty. Comm'n*, 488 U.S. 336, 344-46 (1989), where the facts, when evaluated pursuant to the law, preclude any plausible rational basis for the Town's policy of valuing properties significantly below just value on the basis that the properties happen to be abutting other property of the same owners. *See Armour*, 566 U.S. at 686-88 (discussing the limited applicability of *Allegheny*); *Nordlinger v. Hahn*, 505 U.S. 1, 14-16 & nn. 6-8 (1992) (same).

imposed an impermissibly discriminatory tax retains flexibility in responding to this determination," *McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco*, 496 U.S. 18, 39-40 (1990), because how a state "eliminates unconstitutional discrimination 'plainly is an issue of state law,'" *Levin*, 560 U.S. at 427 (quoting *Stanton v. Stanton*, 421 U.S. 7, 17-18 (1975)).  Indeed, the Supreme Court has explicitly indicated that its practice is "to abstain from deciding the remedial effects" of finding "a tax measure constitutionally infirm" to maintain "federal-state comity."  *Id.*

[¶19]  The Supreme Court has said, however, that the Due Process Clause requires states "to provide meaningful backward-looking relief to rectify any unconstitutional deprivation."  *McKesson*, 496 U.S. at 31.  It has also provided guideposts for determining the appropriate remedy for a discriminatory tax.  In seeking to effectuate equal tax treatment, a state may (1) invalidate and withdraw the benefits from the favored class, (2) extend the benefits to the excluded class, or (3) use some other measure.  *See Levin*, 560 U.S. at 426-27; *Heckler v. Mathews*, 465 U.S. 728, 740 (1984).  In considering these options, it is important to remember that the Equal Protection Clause imposes no "iron rule of equal taxation" and encompasses an area of the law where it is often "impracticable and unwise to attempt to lay down any general rule or

definition." *Bell's Gap R.R. Co. v. Pennsylvania*, 134 U.S. 232, 237 (1890). Accordingly, a remedy that is appropriate in one discriminatory tax case may not be appropriate in another; each case requires a fact-specific analysis.

[¶20]  As for the first option, the Board in this case could not withdraw the abutting lot benefit to achieve equal tax treatment because it lacked the authority to retroactively raise the values of the underassessed properties. *See Adams*, 1999 ME 49, ¶ 26, 727 A.2d 346 ("The Board only has power to grant abatements and does not have the authority to remand the case to the assessor to recompute the tax.").

[¶21]  That brings us to the second option—the one favored by the Taxpayers—which is to extend the benefit to them.  We need not delve into whether either of the abatement amounts decided on by the Board adequately extends the benefit of the abutting lot program, because we reject the Taxpayers' contentions that such a remedy is necessary or even appropriate in the circumstances of this case.

[¶22]  The Taxpayers suffered no greater harm from the abutting lot program than every other taxpayer in the Town.  Except for the few participants in the abutting lot program, all of the approximately 8,500 property taxpayers in the Town paid slightly higher taxes as a result of the improper discounts

provided by the abutting lot program. Additionally, the number of Taxpayers who sought abatements exceeded the number of property owners who received the benefit of the abutting lot program for each of the four years at issue. Thus, to extend the benefit in the manner that the Taxpayers suggest would increase by several magnitudes the negative effect of the abutting lot program on the nonappealing taxpayers, who bore the same burden of the original program as the Taxpayers.[6] *See Williams v. Griffes*, 686 A.2d 964, 967 (Vt. 1996) (Morse, J. concurring) (a state "need not blindly sacrifice the interest of the taxpaying public to the desires of a relative few aggrieved taxpayers" when determining the appropriate remedy for a discriminatory tax scheme). To magnify rather than rectify the discriminatory effect of the program would be an inappropriate mandate under the guise of equality. *Cf. Haman v. Cty. of Humboldt*, 506 P.2d 993, 997 (Cal. 1973) (the proper remedy for discriminatory tax treatment should not increase "discrimination among other taxpayers").

---

[6] The Board supportably found that the Town lost $395,397.90 in tax revenue over the abatement period as a result of the discounts provided by the abutting lot program. By comparison, the parties agree that providing the Taxpayers with 31.48 percent abatements to their land values would cost the Town around $1,600,000.

[¶23]  Of course, providing any abatements will have some effect on nonappealing taxpayers—that is unavoidable—but for us to hold that municipalities are required to provide the full extent of the improper benefit in cases like this could establish a dangerous precedent.  Consider if instead of approximately fifty appealing taxpayers there were 500?  It is not an unthinkable scenario given that the Taxpayers here have no better claims of discrimination than do the thousands of nonappealing taxpayers who were also negatively affected by the abutting lot program.

[¶24]  Consider also if instead of having a total assessed value of several billion dollars, the Town had a total assessed value of $100 million?[7]  With its substantial tax base, the Town here might be able to absorb the cost of extending the benefit of the program to the Taxpayers without cutting funding for critical services or raising taxes significantly, but the same would not be true for municipalities with less substantial tax bases.  In the hypothetical case involving 500 plaintiff taxpayers, challenging a similar program, in a town with a $100 million tax base, giving unjust benefits to rectify giving unjust benefits

---

[7] When we issued our decisions in 2016, we noted that the Town of Scarborough's total valuation was approximately $3.5 billion.  *See Petrin v. Town of Scarborough*, 2016 ME 136, ¶ 32, 147 A.3d 842. According to Maine Revenue Services, the Town's total valuation as of 2019 is $4.3 billion, which is the third highest of any municipality in the State.  *See* Me. Revenue Svcs., *2019 State Valuation* (2019), https://www.maine.gov/revenue/propertytax/sidebar/2019_state_valuation.pdf  (last  visited Dec. 20, 2019).

could substantially compromise the municipality's capacity to provide essential services.

[¶25] What then is the proper remedy? The Supreme Court has suggested a third option: not withdrawing or extending benefits to achieve equal tax treatment, but rather using "some other measure." *Levin*, 560 U.S. at 426. The best measure of the actual disproportionality borne by the Taxpayers here is not the discounts provided by the abutting lot program but rather the effect that those discounts had on the Taxpayers. We alluded to this in our previous decisions when we said that we were remanding "for the Board to address the unlawfully discriminatory effect of the Town's abutting property program" and described that effect as the "unequal apportionment" of the municipal tax burden. *Petrin*, 2016 ME 136, ¶¶ 32-33, 45, 147 A.3d 842. We suggested then and hold now that the injury to the Taxpayers was not that their properties were over-assessed in comparison to the properties in the abutting lot program, but that they paid more than their fair share of taxes as a result of the discounts that were unlawfully provided by that program.

[¶26] The Taxpayers may be made whole by abatements that refund the difference between what they paid in taxes and what they would have paid had the properties in the abutting lot program been assessed at just value. Such a

remedy corrects the equal protection violation by putting the Taxpayers in the position they would have occupied had all taxpayers been treated equally.[8] *See MAPCO Ammonia Pipeline v. State Bd. of Equalization & Assessment*, 494 N.W.2d 535, 537-38 (Neb. 1993), *cert. denied*, 508 U.S. 960 (1993) (approving such a remedy in a similar case of tax discrimination); *Keniston v. Bd. of Assessors*, 407 N.E.2d 1275, 1279-80 (Mass. 1980) (holding that abatements limited to the difference between the amount a taxpayer actually paid and what he or she "should have paid had a municipality followed lawful assessment practices," do not "offend the equal protection clause" even if the abatements do not provide the same treatment that was provided to "the most favored class").

[¶27]  This approach also satisfies the requirement of due process that Taxpayers be provided with meaningful backward-looking relief by refunding the portion of their taxes resulting from the unconstitutional discrimination. *See McKesson*, 496 U.S. at 31.  And it accomplishes the purpose of article IX,

---

[8] To the extent that the Supreme Court's decision in *McKesson Corp. v. Div. of Alcoholic Bevs. & Tobacco*, 496 U.S. 18, 22-23, 36-43 (1990), might be read to suggest that this remedy is insufficient, that case is distinguishable from the one at hand because it involved a state excise tax that discriminated against out-of-state commerce in violation of the Commerce Clause.  *See Tucson Elec. Power Co. v. Apache Cty.*, 912 P.2d 9, 26, 29-31 (Ariz. Ct. App. 1995) (distinguishing the remedies discussed in *McKesson* from the remedies appropriate in cases involving discriminatory property taxes).

section 8 of the Maine Constitution, which "is to equalize public burdens so that a taxpayer contributes to the entire tax burden in proportion to his [or her] share of the total value of all property subject to the tax." *Eastler v. State Tax Assessor*, 499 A.2d 921, 924 (Me. 1985).

[¶28]  Practically speaking, we recognize that there may be times when the amount of such abatements may be too insignificant to justify any individual taxpayer taking action against discriminatory tax schemes, but any remedy must also avoid unduly burdening other nonappealing taxpayers.

[¶29]  The record here reflects that as a result of the Board's original decision granting eight percent abatements, a decision recommended by the Town, the Taxpayers were collectively refunded approximately $380,000 before any interest.[9]  This amount is more than enough to make the Taxpayers

---

[9] In its first decision, the Board granted the Taxpayers interest on the abatements at a rate of seven percent from the date of overpayment pursuant to 36 M.R.S. § 506-A (2018), based upon the Town's contention that that was the proper interest rate for overpayments.  Seven percent is the interest rate that the Town used when it paid the eight percent abatements, which brought the collective amount paid to the Taxpayers to approximately $461,000.  After the Superior Court's remand, however, the Town introduced budget orders for the years at issue showing that the correct interest rate for overpayments was actually three percent.  Thus, the Taxpayers received an extra four percent in interest, which the Town acknowledges must stand if the Board's original decision is reinstated.

There was also some dispute after the Superior Court's remand about when the interest should begin to run.  If the Town made any error in calculating when the interest began to run when it made the eight percent abatement payments, the error was rendered harmless by the extra four percent interest and the fact that the Taxpayers received more money than was necessary to make them whole.

whole and satisfy all of the above-described constitutional requirements.  The Town has already paid the eight percent abatements and is advocating for the Board's first decision.  Accordingly, we need not review in detail whether the Board's original decision meets the criteria for deciding the appropriate amount of an abatement in another hypothetical case.  Here, where the Board's original decision is supported by the Town, it is not outside the reasonable range of discretion allowed the Board under our precedents.

[¶30]  Based on our analysis and in recognition of our deferential standard of review of the Board's decision-making, we vacate the Superior Court's judgment affirming the Board's second decision granting 14.74 percent abatements and remand with the direction to affirm the Board's first decision.

The entry is:

> Judgment vacated.  Remanded to the Superior Court with instructions to affirm the Scarborough Board of Assessment Review's decision granting eight percent abatements.

---

We find no merit in the Taxpayers' suggestion that they were somehow entitled to twenty-five percent interest pursuant to 36 M.R.S. § 504 (2018).  The twenty-five percent interest rate provided in section 504 only applies to the recovery of taxes "not raised for a legal object," and there has been no suggestion that the Town collected taxes for an illegal purpose.

Jonathan A. Block, Esq., Pierce Atwood LLP, Portland; John B. Shumadine, Esq., and Sage M. Friedman, Esq., Murray Plumb & Murray, Portland; and William H. Dale, Esq. (orally), Jensen Baird Gardner & Henry, Portland, for appellants Kenyon C. Bolton III et al.

Michael A. Hodgins, Esq. (orally), Eaton Peabody, Bangor, and Zachary B. Brandwein, Esq., Bernstein Shur, Portland, for cross-appellant Town of Scarborough

Cumberland County Superior Court docket numbers AP-2018-24, AP-2018-26, AP-2018-30, and AP-2018-31
FOR CLERK REFERENCE ONLY